Marie J. **BRADFORD**

v.

**TARRANT COUNTY JUNIOR COLLEGE DISTRICT and Joe B. Rushing, Chancellor, et al.**

**Civ. A. No. CA 4–1976.**

United States District Court,
N. D. Texas,
Fort Worth Division.

Jan. 25, 1973.

William C. Odeneal, Dallas, Tex., for plaintiff.

Tom H. Law, Fort Worth, Tex., for defendant.

MEMORANDUM OPINION

MAHON, District Judge.

Plaintiff in this cause of action, Marie J. Bradford, alleges abridgement of her constitutional rights under the First and Fourteenth Amendments with regard to freedom of speech and due process. Specifically, she has urged that her rights to free speech were violated in that the nonrenewal of her contract of employment by the Tarrant County College District was a direct result of questions she asked and remarks she made at a faculty meeting on April 22, 1969, during the 1968–1969 school year. She further contends that she was denied due process in that she was not given express notice as to the reasons for her not having been given an employment contract for the school year 1970–1971 and was not given a hearing whereat she could contest her nonrenewal.

The evidence reflects that in the spring of 1969, "four or five" unnamed professors, instructors, and department heads were informed by the Administration of Tarrant County Junior College that, depending on the individual circumstances, they would either be given different positions at that institution, or would not be rehired for the following school year, 1969–1970. There is nothing in the evidence to suggest that the plaintiff was one of the individuals who was either to be demoted or whose contract would not be renewed; to the contrary, it is clear that plaintiff Bradford was not one of the professors toward whom the administrative action was directed.

As a result of the failure to renew the above-mentioned contracts, some concern developed among other members of the faculty at Tarrant County Junior College regarding their own positions and futures with that institution. A faculty meeting was conducted on April 22,

1969, at which time professors and instructors were given an opportunity both to ask questions and express their views concerning the policies of the Junior College, particularly with reference to those matters relating to employment practices that were of concern to the faculty and administration at that time. At that meeting, not only plaintiff, but several faculty members directed either questions or statements to Dr. Joe B. Rushing, then President of Tarrant County Junior College, who was presiding at the meeting. In the dialogue involving plaintiff and members of the administration inquiry was made of Dr. Rushing's personal responsibility for certain information which had been provided the news media in March of 1969 concerning individuals and policies involved in the nonrenewal of contracts at the Junior College. Plaintiff also indicated some concern regarding the policy relating to nonrenewal of contracts theretofore followed in that it allowed what she considered to be but a brief time after notice of nonrenewal in which a professor could seek employment for the following school year elsewhere. Further questions by plaintiff related to the method of notification of nonrenewal with regard to contracts; what authority Department Heads would have in retaining or not retaining teachers; identification of general students and other such matters.

Testimony shows that no one who was a member of the administration of Tarrant County Junior College objected in any way to the subject matter of such statements and questions, and that no disciplinary action or reprimand was directed at plaintiff by virtue of her having asked such questions. There is conflict in the testimony as to the demeanor of the plaintiff at the time she addressed the faculty meeting of April 22, 1969, and some conflict in the testimony as to the manner in which she conducted herself upon that occasion. Witnesses have described plaintiff Bradford's behavior and manner of asking questions and making statements at the faculty meeting, on the one hand, as ladylike and gracious, and on the other hand, as having been hostile, caustic, heckling, and abrasive and made with an apparent intention not to elicit information but to embarrass the Administration of Tarrant County Junior College. The Court is not called upon to resolve this conflict and expresses no opinion as to the manner in which plaintiff conducted herself.

On May 15, 1969, approximately three weeks after the April 22nd meeting, plaintiff Bradford was offered a contract for the 1969–1970 school year which included a raise of $700.00 over the salary she was receiving for the 1968–1969 term. She accepted the offer and was employed as an instructor of English at Tarrant County Junior College during the following school year.

In December of the 1969–1970 school year, instructors' and professors' contract renewals for the 1970–1971 year were under consideration at the Junior College.[1] At some time during the first few days of that month, Col. Henry Moss, the Chairman of the Department of English, and Dr. Philip Speegle, the Dean of Instruction, made known to plaintiff that they both intended to recommend that she be rehired for the ensuing school year. As part of an Evaluation Program at Tarrant County Junior College, it was customary policy and procedure for a private, confidential conference to be held with regard to an individual instructor at which time his or her performance would be appraised and critiqued. As was known to the plaintiff, it was only following such an evaluation conference that formal recommendations would be directed through the "chain of command" and then any such renewal and recommendation were contingent upon the approval of Dr. Joe

[1] This was undertaken at what was apparently an earlier time than had been done the previous year and to which, in the previous year, faculty objection had been made.

B. Rushing, President of the College, with whom final authority for renewal rested.[2] On December 10, 1969, such a conference was held with regard to plaintiff Bradford. The evaluation committee meeting with plaintiff was composed of Dr. Speegle, Dr. Mulkey, and Col. Moss. At some point in the discussion, after it had again been indicated to plaintiff that it would be recommended that she be retained on the faculty for the 1970–1971 school year, Dr. Speegle, in what was intended as constructive criticism in a "vein of good will," expressed his opinion that plaintiff had acted in an "unprofessional" manner as to her tone of voice, inflection, and demeanor during her questioning of Dr. Rushing and Dr. McKinney at the faculty meeting of April 22, 1969. The plaintiff, however, took offense at the suggestion that she had in any way conducted herself in an "unprofessional" manner and the meeting ended on that note.

The next day, on December 11, 1969, at plaintiff's request, a second meeting was conducted at which Dr. Speegle, Dr. Mulkey, and Mr. Moss met with plaintiff. At this second meeting, plaintiff Bradford inquired of Dr. Speegle whether he had referred to her manner of conduct at the April 22, 1969, faculty meeting as having been "unprofessional." When Dr. Speegle answered in the affirmative, plaintiff refused to accept the criticism, indicated that she had consulted with an attorney on the previous evening, demanded that any such reference to her conduct be retracted in writing and stated that if it were not she would take legal action. Dr. Speegle stated that under the circumstances he had no alternative but to terminate the meeting until such time as he had had an opportunity to consult with Tarrant County Junior College attorneys.

Subsequent to plaintiff's meeting with the evaluation committee on December 11, 1969, when she indicated her unwillingness to accept what was intended as constructive criticism, demanded a written retraction and threatened legal action, Dr. Speegle and Dr. McKinney reevaluated their position with regard to plaintiff's renewal of employment, and recommended to Dr. Rushing that plaintiff Bradford not be rehired for the year 1970–1971. Dr. Speegle testified that in reaching that conclusion he was in no way making an effort to prevent an individual from exercising legal rights, but that if at any time a remark that was made as constructive criticism in a private conference could be the basis for a demand for a formal retraction and could precipate a lawsuit, it would not only be disruptive to the administration of the school but would also pose a threat to the entire teacher evaluation system whereby the college tried to improve the quality of instruction and might even eliminate the system entirely. This Court concurs and is in complete accord with Dr. Speegle's reasons for the action taken.

On December 13, 1969, plaintiff received a letter from Chancellor Joe B. Rushing, dated December 12, 1969, advising her that she would not be offered a contract for the 1970–1971 college year.

On March 30, 1970, plaintiff Bradford requested a place on the agenda of the next meeting of the Trustees of Tarrant County Junior College District. This request was granted, and she appeared before the Trustees' meeting of April 15, 1970, which a week before had been moved up from April 16, 1970, in order to assure that a quorum be present. At the point on the agenda when plaintiff was to appear, the Board of Trustees went into Executive Session so that the incident involving plaintiff could in no

2. The "chain of command," in ascending order, was as follows: (1) Marie J. Bradford, Instructor; (2) Col. Henry Moss, Chairman of English Department; (3) Dr. Gwen Mulkey, Chairman of the Division of Communications; (4) Dr. Philip T. Speegle, Dean of Instruction; (5) Dr. Charles L. McKinney, Executive Dean; and (6) Dr. Joe B. Rushing, President of Tarrant County Junior College.

way be publicized. Plaintiff was introduced to the Board and permitted to make any presentation she desired, and no restrictions were made as to what matters she could bring before the Board. Plaintiff gave to each Board member a copy of a written statement detailing her grievances which she then read to the Board. She presented no witnesses, nor did she request any additional witnesses be heard. After her presentation, the Board considered her statement and voted unanimously to take no further action on the matter, and plaintiff was so advised by letter from Dr. Rushing dated April 17, 1970.

In addition to the above facts, the Court expressly finds the following:

1. That while Mr. Moss and Dr. Speegle on or before December 11, 1969, had indicated to plaintiff that she would be rehired for the school year 1970–1971, it was known to plaintiff that the final authorization for hiring rested with Dr. Rushing, then President of Tarrant County Junior College, and that their intended recommendations were not binding on the college; plaintiff Bradford was never, in fact, rehired for the school year 1970–1971, either verbally or in writing;

2. That articles appearing in the Fort Worth, Texas, newspapers concerning the nonrenewals and demotions of March, 1969, which plaintiff indicated impugned her professionally, in fact, made no reference to her and in truth and in fact, were not directed toward her;

3. That at the time in question no tenure program existed at Tarrant County Junior College;

4. That plaintiff was not a tenured instructor at the time of her nonrenewal;

5. That plaintiff's personnel file contained no reference to, nor mention of, the incident in question;

6. That the incident involving plaintiff was never mentioned or referred to in any news media story;

7. That plaintiff was never criticized by defendants for asking questions or making statements or for the subject matter of same at the April, 1969, faculty meeting;

8. That the only criticism of plaintiff was directed to the manner in which the questions were asked and the statements were made, as evidenced by plaintiff's tone of voice, inflection of the voice, abrasiveness, hostile attitude, etc.;

9. The failure of Tarrant County Junior College District to offer plaintiff employment beyond the college year 1969–1970 was not due to plaintiff's action at the faculty meeting held on April 22, 1969.

The Court draws the following conclusions of law:

1. Tarrant County Junior College at the time in question had not adopted such regulations or standards of practice governing instructors similarly situated to plaintiff which would have created an obligation of reemployment;

2. That plaintiff Bradford did not have a legitimate claim of entitlement to reemployment and renewal of contract rights for the school year 1970–1971 and had nothing more than a unilateral expectation thereof;

3. Plaintiff Bradford's interest in renewal of an employment contract for the school year 1970–1971 was not such that due process demanded that she have a hearing on all matters involved, and that, in fact, plaintiff actually had no property rights to employment beyond her one year contract from September 1, 1969, to May 31, 1970;

4. *None of plaintiff's rights to free speech were abridged by the nonrenewal of plaintiff's teaching contract;*

5. In failing to renew plaintiff's teaching contract, the defendants were lawfully exercising the authority given them by the Texas Education Code;

6. Plaintiff has sustained no legally compensable damages from defendants;

7. This is not a proper Class Action under Rule 23, Federal Rules of Civil Procedure.

The Court is aware that "[s]imply because teachers are on the public payroll does not make them second-class citizens in regard to their constitutional rights," Pred v. Board of Public Instruction, 415 F.2d 851, 855 (5th Cir. 1969), and that persons so situated do not forfeit their rights under the First and Fourteenth Amendments to the Constitution. The undisputed facts in this case do not bring plaintiff Bradford within the ruling of the *Pred* case. Plaintiff's contention that her contract was not renewed because she asked questions at the April 22, faculty meeting has no factual basis. Subsequent to the April faculty meeting, plaintiff's contract for employment was renewed for a full academic year (1969–1970) and no contention is made that there was any violation of her "constitutional right" to exercise freedom of free speech thereafter. ·It was after the customary evaluation conference in December, 1969, that the Junior College made the decision that it would not exercise its discretion to offer plaintiff a contract for employment for the next year, 1970–1971. It is the finding of this Court that the failure to renew plaintiff's contract for 1970–1971 was in no way caused by her having exercised First Amendment rights of free speech and, further, that the nonrenewal of her contract did not abridge plaintiff's First Amendment rights.

And while plaintiff's "lack of a contractual or tenure right to reemployment, taken alone [does not defeat her] claim that the nonrenewal of [her] contract violated the First and Fourteenth Amendments," Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570, 577 (1972), there is nothing before the Court that would support a finding that plaintiff had any "property" rights to her reemployment for the 1970–1971 school year.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. . . .

\* \* \* \* \*

. . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 576–577, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548, 560–561 (1972).

During the period when contracts for reemployment were being reviewed, plaintiff may well have had high hopes and some degree of expectancy of being rehired, after having been told by Col. Moss and Dr. Mulkey that they would recommend that she be rehired and realizing that only a favorable report of the evaluation committee and final approval by the Board of Trustees were necessary for her contract to be renewed. However, such expectancy was not such as is contemplated by the law as being a "legitimate claim of entitlement." Plaintiff had no tenured rights to continued employment, nor do the facts before this Court amount to a showing of a loss of property. A mere subjective "expectancy" to employment is not protected by procedural due process. Perry v. Sindermann, 408 U.S. at 603, 92 S.Ct. at 2700, 33 L.Ed.2d at 580; Moore v. Knowles, 466 F.2d 531 (5th Cir. 1972). Likewise, there is nothing before this Court to indicate that Tarrant County Junior College "create[d] an obligation as between itself and an instructor where none might otherwise exist under the legal standards for the interpretation of contract relationships regularly applied to transactions in the marketplace [by adopting] regulations or standards of practice governing nontenured employees which create[d] an expectation of reemployment." *Cf.* Ferguson v. Thomas, 430 F.2d 852, 856 (5th Cir. 1970).

To permit plaintiff to prevail under the facts of this case would not only deny defendants their First Amendment rights, but would silence the voice of constructive criticism to the detriment

of our educational processes. Plaintiff's rights were neither violated under the First or Fourteenth Amendments. Accordingly, it is ordered that plaintiff take nothing and that judgment be entered for the defendants.