Edward E. SHORE and L. L. Morriss, Jr.

v.

Karl HOWARD and Andy Fournier.

Civ. A. No. CA 4–75–84.

United States District Court,
N. D. Texas,
Fort Worth Division.

May 20, 1976.

Craig D. Caldwell, Fort Worth, Tex., for plaintiffs.

Tim Curry, Criminal Dist. Atty., Joe Shannon, Asst. Crim. Dist. Atty., Tarrant County, Fort Worth, Tex., for defendants.

## MEMORANDUM, ORDER OF DISMISSAL, AND GRANT OF SUMMARY JUDGMENT

MAHON, District Judge.

Plaintiffs in this action, Edward E. Shore and L. L. Morris, Jr., claim that they were wrongfully dismissed from their positions of employment in the Adult Probation Office of Tarrant County, Texas, by Defendants Karl Howard and Andy Fournier. Contending that Defendants have denied them the rights, privileges, and immunities guaranteed by the Fifth and Fourteenth Amendments to the Constitution, Plaintiffs assert that their dismissals give rise to causes of action under 42 U.S.C. §§ 1982, 1983, 1985, & 1986, and that the Court is vested with jurisdiction over these causes of action by 28 U.S.C. § 1343. Defendants have filed various motions both to dismiss and for summary judgment, all of which have been thoroughly briefed by counsel for both sides and supported by affidavits. These motions are now before the Court.

### I.

### FACTUAL BACKGROUND

To put this lawsuit in perspective, it is necessary to set forth facts that occurred prior to Plaintiffs' employment with the Tarrant County Adult Probation Office.

*A. Tarrant County Civil Service Commission*

On 21 February 1972, pursuant Tex.Rev. Civ.Stat.Ann. art. 2372h–6, the Tarrant County Commissioners' Court ordered the creation of a Civil Service System in Tarrant County and the appointment of three individuals to a Tarrant County Civil Service Commission. That Order (No. 41583), in accordance with art. 2372h–6, excluded from the category of career service, among others, "[p]ersons employed through special grants or funding where the County's portion of the salary contribution is less than 100%."

On 7 August 1972, the Commissioner's Court approved adoption of the Rules of the Tarrant County Civil Service Commission (Order No. 41913). Rule VII sets forth the procedure for discipline of a Civil Service employee, which encompasses suspensions, demotions, and removals. Section 7.2 of Rule VII lists numerous causes for which career service personnel can be disciplined. Section 7.3 provides for an appeal to the Commission by any officer or employee in the classified Civil Service who is disciplined, and section 7.4 governs the procedure and conduct of that appellate hearing.

On 19 February 1973, by Order No. 42355, the Commissioner's Court adopted the following ruling by the Civil Service Commission:

> . . . [E]mployees compensated by funding through federal grants [are] in a special category. These individuals will be "non-civil service" although they receive most of the same benefits as county employees. The benefit program was established as a portion of the county's in-kind services.
>
> Consideration will be given at the termination of the grant as to the disposition of the program. . . .

On 10 March 1975, on the recommendation of its legal advisor, the Commissioner's Court noted that proper notice had not been given for several of its meetings as required by the Texas Open Meetings Law, Tex.Rev.

Civ.Stat.Ann. art. 6252–17, and ordered that the Civil Service System be declared a nullity. The Commissioner's Court specifically ordered invalidated, in Order No. 44022, previous Orders No. 41583, 41913, 41934, 42353, 42379, and 43259. On 5 May 1975, however, pursuant to an attorney general's opinion, the Commissioner's Court rescinded that part of Order No. 44022 declaring the Civil Service System and the above-mentioned orders to be a nullity (Order No. 44196).

### B. The Positions of Adult Probation Volunteer-Coordinators at the Tarrant County Adult Probation Office

On 28 November 1972, the Office of the Governor of the State of Texas approved the application of the Tarrant County Adult Probation Office for a grant of federal funds through the Texas Criminal Justice Council for an Adult Probation Volunteer-Coordinators program (Grant No. 2–F2–1329). The project duration was to be for two years, from 1 January 1973 through 31 December 1974, with a total funding of $93,295.00 from federal funds and $31,034.00 from the grantee's funds. Of this amount, the Texas Criminal Justice Council supplied $45,462.00 for the first year; the grantee's contribution for the first year was to be $15,601.00. In addition to professional, travel, equipment, and operating expenses, the program was to pay the salaries of the following personnel: (1) 25% of the salary of the one Chief Probation Officer, (2) 25% of the salary of the three Probation Officers, (3) 100% of the salary of three Volunteer-Coordinators, and (4) 100% of the salary of one secretary. The purpose of the program was to provide for Adult Probation Volunteer-Coordinators to be responsible for recruiting, training, and supervising volunteer probation officers, in order to generally improve the probationary system in Tarrant County.

On 31 October 1973, the project received from the Texas Criminal Justice Council an extension of the first year's grant, from 31 December 1973 to 28 February 1974. The Office of the Governor of the State of Texas awarded a grant of $45,500.00.[1] to the project on 26 April 1974, for second year funding from 1 March 1974 to 28 February 1975.

On 13 February 1975, the project again received an extension from the Texas Criminal Justice Council for the period from 28 February 1975 to 31 March 1975. On 30 April 1975, however, the Governor of the State of Texas disapproved the application for $45,000.00 funding for a third-year continuation of the program. The remaining unexpended project funds ($3,032.31) were then refunded to the Texas Criminal Justice Council.

By the uncontradicted affidavit of, and copies of records submitted by, Robert Earl Bogard, Assistant County Auditor for Tarrant County, Texas, there are no records filed in the Office of the Tarrant County Auditor to reflect the existence of Adult Probation-Volunteer Coordinator as a job position in the county-level government of Tarrant County. Instead, the salaries and benefits of the Adult Probation-Volunteer Coordinators were paid entirely from monies granted by the Texas Criminal Justice Council, which were kept and disbursed from a separate fund (the 35th fund) maintained by the Office of the Tarrant County Auditor. The individuals who held the positions of Adult Probation-Volunteer Coordinators were "grant temporary employees," which meant that they could be terminated at any time during the period of the grant without prior approval of the funding agency. The positions that Plaintiffs held have ceased to exist.

### C. The Employment and Dismissal of Plaintiffs as Adult Probation-Volunteer Coordinators

Both Plaintiffs are adult Caucasian males. The records of the Tarrant County

1. This $45,500 consisted of $40,950 in federal funds and $4,550 in state funds. The grantee's cash contribution was to be $1,000. In providing for personnel salaries, the second-year grant deleted the Probation Officers from the project, but provided for payment of 30% of the salary of a Unit Supervisor.

Adult Probation Office indicate that prior to Plaintiff Shore's employment, he had been a Coordinator in the Inmate Training Program of the Tarrant County Jail, a Co-ordinator/Counselor in the NAB/JOBS Program Vocational Guidance Systems, and a volunteer for work at the Federal Correctional Institute in Fort Worth, Texas. Plaintiff Shore is a member of the Texas Corrections Association. Prior to his employment, Plaintiff Morriss had been Pastor of the Western Hills Baptist Church in Fort Worth, Texas, and Associate Pastor of the Cliff Temple Baptist Church in Dallas, Texas. Plaintiff Morriss had had several years experience in general counseling and in transactional analysis therapy.

At all times relevant to this action, Defendant Howard was the Director of the Tarrant County Adult Probation Office, and Defendant Fournier was the Administrative Assistant in that Office.

On or about 1 March 1973, Plaintiff Morriss was hired by Defendant Howard to work as an Adult Probation-Volunteer Coordinator in the Tarrant County Adult Probation Office. On or about 1 February 1974, Plaintiff Shore was similarly employed. Neither Plaintiff worked in the Tarrant County Adult Probation Office by virtue of any contract of employment. They both took a Tarrant County Civil Service examination and both enjoyed some of the same benefits as did Tarrant County Civil Service employees. Their position and pay were based on the Tarrant County Index and Job Classification System. Both Plaintiffs received overall ratings of "above standard" from their Unit Supervisor on 22 January 1975. These ratings were for the periods 1 February 1974 to 1 January 1975 for Plaintiff Morriss. Both ratings were reviewed by Defendant Fournier.

On 1 February 1974, both Plaintiffs were terminated from their employment by Defendant Howard acting in his official capacity. At the time of their termination, Plaintiffs were earning $921.00 per month in their positions as Adult Probation-Volunteer Coordinators. Plaintiffs assert that they requested a hearing from both Defendant Howard and the Personnel Director of Tarrant County, and that they were at that time informed that they were not entitled to the Tarrant County Civil Service rules and regulations. Neither Plaintiff has ever made a written request for a hearing before the District Judges of Tarrant County, Texas, nor has either Plaintiff appeared before a meeting of those Judges to request a hearing.

It is stipulated that at all times relevant to this action, Defendant Howard was not an employee of Tarrant County, Texas, but rather was employed by the District Judges of Tarrant County, Texas, pursuant to Tex. Rev.Civil Stat. art. 2292–2.

## II.

### CONTENTIONS OF THE PARTIES

Plaintiffs claim that, because of the nature of their employment, they became employees of Tarrant County, Texas, and subject to its Civil Service rules and regulations. In this regard, they contend that the notice given for the meetings the Tarrant County Civil Service Commission for 14 February 1973 and of the Tarrant County Commissioners Court for 19 February 1973 were neither in the proper form nor in accordance with the Open Meeting Law of the State of Texas. Therefore, they conclude that the Order of the Commissioners Court of that date concerning classification of employees compensated through federal grants is void, and that they were entitled to a hearing pursuant to the Rules of the Tarrant County Civil Service Commission. Because they claim that the actions of Defendant Howard were without just cause under those Rules, they contend that they are entitled to reinstatement at their previous rate of pay and to back pay for the period since 1 February 1974.

Alternatively, Plaintiffs claim that Tex. Rev.Civ.Stat. art. 2292–2 requires that employees of the Tarrant County Adult Probation Office be dismissed only by direct action of the District Judges. They contend, therefore, that they were improperly dismissed by Defendant Howard and are entitled to reinstatement and back pay.

Plaintiffs further claim that Defendant Fournier conspired with Defendant Howard to deny them their civil rights under the Constitution and laws of the United States.

Plaintiffs request relief in the form of court costs, reasonable attorney's fees, reinstatement, back wages, and compensatory and exemplary money damages against both Defendants for violating Plaintiffs' civil rights and for damaging their professional reputations.

Defendants have raised several jurisdictional questions with respect to the applicability of 42 U.S.C. §§ 1982, 1983, 1985, & 1986. Defendants further claim: that the Tarrant County Civil Service program does not apply to the Tarrant County Adult Probation Office, or alternatively, at least not to those employees who work under federal grants; that Plaintiffs had no reasonable expectation of continued employment, or, alternatively, that Plaintiffs only had a reasonable expectation of continued employment through 28 February 1975 (the date the grant expired), or, alternatively, through 31 March 1975 (the date the positions held by Plaintiffs ceased to exist); that Plaintiffs are not entitled to reinstatement since the positions they occupied have ceased to exist; that Plaintiffs were not entitled to a procedural due process hearing

prior to termination; and that Plaintiffs are not entitled to relief for any alleged damage to their reputation. Defendants additionally contend: that the District Judges of Tarrant County are the proper and necessary defendants to this lawsuit, and that any suit against those Judges is barred by the doctrine of judicial immunity; that Plaintiffs have failed to exhaust their administrative remedies in not requesting a hearing before the District Judges of Tarrant County; that Plaintiffs are entitled to neither attorney's fees nor court costs; and that neither Defendant denied, nor conspired to deny, Plaintiffs of their civil rights.

## III.

### NECESSARY DEFENDANTS AND JUDICIAL IMMUNITY

■ The Court agrees with Defendants that the Criminal and District Judges of Tarrant County, Texas, are necessary parties defendant to this action. It is stipulated that, in dismissing Plaintiffs from their positions of employment, Defendant Howard was acting in his official capacity as Director of the Adult Probation Office of Tarrant County, Texas, an employee of the aforementioned Judges. Under Tex.Rev. Civ.Stat.Ann. art. 2292–2,[2] the District

2. Tex.Rev.Civ.Stat.Ann. art. 2292–2, which is relevant to various aspects of this case, provides in pertinent part:

Section 1. The Judges of the District Courts and Criminal District Courts in Tarrant County, for the purpose of effectively carrying out the adult probation and parole laws of this State, are hereby authorized to appoint an Adult Probation and Parole Officer for Tarrant County, where a probation and parole officer has not been assigned to a court and/or district in Tarrant County in accordance with the provisions of Chapter 452, Acts of the Fiftieth Legislature, 1947, known as the Adult Probation and Parole Law and codified as Article 781b in Vernon's Texas Code of Criminal Procedure. The salary of such Probation and Parole Officer shall be set by the Commissioners Court of Tarrant County and shall be paid out of the general fund of the county.

Upon approval of such expenditures by the Commissioners Court, the aforesaid Judges may appoint assistant probation and parole officers and such other employees as they

deem necessary to serve in the Adult Probation Office. The salaries of all such employees shall be paid from the general fund of the county. . . .

The Adult Probation and Parole Officer and all assistant probation and parole officers shall be of good moral character and acquainted with the Adult Probation and Parole Law. The authority and duties of such officer shall be the same as those prescribed for probation and parole officers by the Adult Probation and Parole Law. Such officer and all other employees of the Adult Probation Office shall be subject to removal at the will of the majority of the Judges of the several District Courts and Criminal District Courts of Tarrant County.

\* \* \* \* \* \*

Sec. 3. Nothing in this Act shall be construed as repealing Chapter 452, Acts of the Fiftieth Legislature, 1947, except as to provide an alternate method of appointment of Chief and Assistant Probation and Parole Officers where such an Officer has not been

Judges are given the ultimate power to employ and dismiss individuals in the Tarrant County Adult Probation Office. Any actions by Defendant Howard in his official capacity would be as an agent for the Judges. Any equitable relief granted must therefore be directed against the "Judges of the District Courts and Criminal District Courts of Tarrant County," as set out in article 2292–2.

 The Court, however, does not agree with Defendant that any action against those Judges is barred by the doctrine of judicial immunity. The doctrine of judicial immunity is, of course, well established in American jurisprudence, and applies to cases brought under the Civil Rights Acts. *Pierson v. Ray*, 386 U.S. 547, 554–555, 87 S.Ct. 1213, 1217–1218, 18 L.Ed.2d 288, 294–295 (1967); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 346–356, 20 L.Ed. 646, 649–652 (1871). Generally stated, the doctrine of judicial immunity provides that a judge may not be held civilly liable for damages for acts committed within his judicial discretion. *Pierson v. Ray*, 386 U.S. at 553–554, 87 S.Ct. at 1217, 18 L.Ed.2d at 294; *Bradley v. Fisher*, 80 U.S. (13 Wall.) at 347, 20 L.Ed. at 649.

 Judicial immunity is thus neither an absolute nor an unlimited bar to any suit brought against a judge or judicial officer. Common-law immunities extend only so far as the interests of the common good demand protection for the holder of the office from liability for carrying out his official functions. The application of the doctrine of judicial immunity is restricted to its single objective of protecting judicial freedom in the process of deciding civil and criminal cases. Where the initiative and independence of the judiciary is not effectively impaired, the doctrine of judicial immunity does not hold. *See Doe v. County of Lake, Indiana*, 399 F.Supp. 553, 555–560 (N.D.Ind. 1975) (providing an excellent general dis-

cussion of judicial immunity). As one example, there is no official immunity from criminal liability. *O'Shea v. Littleton*, 414 U.S. 488, 503, 94 S.Ct. 669, 679, 38 L.Ed.2d 674, 687 (1974).

 In point, there is no judicial immunity to civil actions for equitable relief under 42 U.S.C. § 1983. *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, 2161, 32 L.Ed.2d 705, 717 (1972). Nor is a judicial officer immune from a civil action that complains of acts that are properly characterized as ministerial or administrative as opposed to judicial. The Supreme Court long ago established this ministerial distinction in the still valid and often-cited case of *Ex parte Virginia*, 100 U.S. 339, 25 L.Ed. 676 (1879), wherein a state judge was criminally indicted under the predecessor statute to 18 U.S.C. § 243 for excluding the names of Black citizens from the grand and petit jury lists. There, the Supreme Court stated:

> . . . Whether the act done by him was judicial or not is to be determined by its character, and not by the character of the agent. Whether he was a county judge or not is of no importance. The duty of selecting jurors might as well have been committed to a private person as to one holding the office of a judge. It often is given to county commissioners, or supervisors, or assessors. In former times, the selection was made by the sheriff. In such cases, it surely is not a judicial act, in any such sense as is contended for here. It is merely a ministerial act, as much so as the act of a sheriff holding an execution, in determining upon what piece of property he will make a levy, or the act of a roadmaster in selecting laborers to work upon the roads. That the jurors are selected for a court makes no difference. So are court-criers, tipstaves, sheriffs, & c. Is their election or their appointment a judicial act?

assigned to any court and/or district in Tarrant County as provided in this Act.
(footnotes omitted).
"Chapter 452, Acts of the Fiftieth Legislature, 1947, known as the Adult Probation and

Parole Law, and codified as Article 781b in Vernon's Texas Code of Criminal Procedure" has been superseded by Tex.Code Crim.Proc. Ann. art. 42.12. Relevant parts of article 42.12 are set out in footnote 8 *infra*.

*Ex parte Virginia,* 100 U.S. at 348, 25 L.Ed. at 680.

The rhetorical question posed by the Supreme Court in *Ex parte Virginia* clearly disposes of the claim of judicial immunity in regard to the employment and dismissal of employees within the context of civil rights acts.[3]

The Court is therefore of the opinion that the "Judges of the District Courts and Criminal District Courts for Tarrant County, Texas" are proper and necessary parties defendant to any equitable relief sought by Plaintiffs in this lawsuit. Since the Judges are necessary defendants only for the purpose of enforcing equitable relief, the Court is further of the opinion that Plaintiffs should be allowed to amend their complaint to add these Judges as defendants. The Court will consider the remainder of Defendants' motions to dismiss and for summary judgment as if the Judges had already been named as defendants.

## IV.

### 42 U.S.C. § 1982

The Court is of the opinion that Plaintiffs have no cause of action under 42 U.S.C. § 1982, which provides that all conveyances and holdings of real and personal property shall be without racial prejudice.[4]

Plaintiffs claim that they were dismissed from their employment because they refused to follow the practice of racial discrimination toward probationers that they allege Defendants have instituted in the Tarrant County Adult Probation Office. This claim is evidently the charge of racial discrimination upon which they seek to found their section 1982 action.

■ The history and policy of section 1982 is discussed in detail in *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 420–437, 88 S.Ct. 2186, 2193–2202, 20 L.Ed.2d 1189, 1196–1206 (1968). Historically, there is a strong interrelation between section 1982 and 42 U.S.C. § 1981, since the operative language of both statutes is traceable to the Civil Rights Act of 1866, 14 Stat. 27 (April 9, 1866). *Tillman v. Wheaton-Haven Recreation Ass'n,* 410 U.S. 431, 439–440, 93 S.Ct. 1090, 1094–1095, 35 L.Ed.2d 403, 410 (1973); *Hurd v. Hodge,* 334 U.S. 24, 30–31 n. 7, 68 S.Ct. 847, 850–851, 92 L.Ed. 1187, 1192–1193 (1948). Both statutes are directed at the same type of discrimination, though in different contexts, and both are to be construed and applied in a similar manner. *Tillman,* 410 U.S. at 440, 93 S.Ct. at 1095, 35 L.Ed.2d at 410. An excellent analysis of the historical background of section 1981 is set forth in *Spiess v. C. Itoh & Co.,* 408 F.Supp. 916, 919–926, 44 U.S.L.W. 2379 (S.D.Tex.1976).

■ The modern trend of judicial thought is toward finding that "white citizens" have standing to assert claims under both sections 1981 and 1982. *Spiess,* 408 F.Supp. at 927–931, 44 U.S.L.W. at 2379; *Hollander v. Sears, Roebuck & Co.,* 392 F.Supp. 90, 92–94 (D.Conn.1975); *Central Presbyterian Church v. Black Liberation Front,* 303 F.Supp. 894, 898–899 (D.C.Mo. 1969). *See also Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). *Cf. McDonald v. Sante Fe Trail Transportation Co.,* 513 F.2d 90, 90–91 (5th Cir. 1975), *cert. granted,* 423 U.S.

---

**3.** This is not to say that judicial officers are always liable in damages for the employment or dismissal of employees within the context of civil rights acts. Judicial officers are clearly susceptible to equitable remedies fashioned against them under such circumstances. The question of the liability of judges to damages, however, is vague. Certainly the availability of judicial immunity for suits in damages for hiring or dismissing employees would require a careful weighing of the circumstances under which each suit might arise. The Court does not reach this question in the present action, since under the stipulated facts, the Judges of the Criminal and District Courts could not possibly be liable for monetary damages; the action for damages lies only against Defendants Howard and Fournier.

**4.** In full, 42 U.S.C. § 1982 provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

923, 96 S.Ct. 264, 46 L.Ed.2d 248 (1975). *Contra, Perkins v. Banster*, 190 F.Supp. 98, 99 (D.Md.1960), *aff'd*, 285 F.2d 426 (4th Cir. 1960). Nevertheless, it is clear from the language of the statutes and the history of the Civil Rights Act of 1866 that sections 1981 and 1982 only give rise to a cause of action based on racial discrimination. *Jones*, 392 U.S. at 415–444, 88 S.Ct. at 2190–2205, 20 L.Ed.2d at 1194–1210; *Purkey v. Ciolino*, 393 F.Supp. 102, 106 (E.D.La.1975); *Cahill v. Cedar County, Iowa*, 367 F.Supp. 39, 45 (N.D.Iowa 1974), *aff'd*, 419 U.S. 806, 95 S.Ct. 21, 42 L.Ed.2d 35 (1974); *Arnold v. Tiffany*, 359 F.Supp. 1034, 1035 (C.D.Cal. 1973); *Schetter v. Heim*, 300 F.Supp. 1070, 1073 (E.D.Wis.1969). For a plaintiff to predicate an action on these statutes, he must allege that he has been deprived of a right that, under similar circumstances would have been accorded to a person of a different race. *Agnew v. City of Compton*, 239 F.2d 226, 230 (9th Cir. 1956), *cert. denied*, 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910 (1957); *Easley v. Blossom*, 394 F.Supp. 343, 344 (S.D.Fla.1975); *Willis v. Chicago Extruded Metals Co.*, 358 F.Supp. 848, 851 (N.D.Ill.1973).

■ Thus, to assert a cause of action under sections 1981 and 1982, a plaintiff must claim that he has been the direct victim of racial prejudice, not merely that the action of which he complains somehow involved racial prejudice. Plaintiffs here can make no such claim, and so have no cause of action under section 1982.

## V.

### 42 U.S.C. §§ 1985 & 1986

■ Plaintiffs assert a cause of action under 42 U.S.C. § 1985(2) & (3).[5] It is well settled that an action will lie under § 1985(2) & (3) only if the complaint makes out a claim constituting a denial of equal protection. A claim of denial of due process will not support such an action. *Dowsey v. Wilkins*, 467 F.2d 1022, 1026 (5th Cir. 1972); *Slegeski v. Ilg*, 395 F.Supp. 1253, 1255 (D.Conn.1975); *Collins v. Bensinger*, 374 F.Supp. 273, 277 (N.D.Ill.1974, *aff'd*, 506 F.2d 1405 (7th Cir. 1974), *cert. denied*, 422 U.S. 1058, 95 S.Ct. 2683, 45 L.Ed.2d 710 (1975); *Swift v. Fourth National Bank of Columbus, Ga.*, 205 F.Supp. 563, 566 (M.D. Ga.1962); *Bryant v. Harrelson*, 187 F.Supp. 738, 740 (S.D.Tex.1960). *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1971).

■ Plaintiffs assert in their First Amended Original Complaint (at 5) that "[T]heir protected rights of due process were capriciously and arbitrarily denied, and [that] they have been denied a vital property right. . . ." Indeed, all of Plaintiffs' claims rest on their assertion that, concerning their dismissal, they did not receive the hearing to which they claim they were entitled under either Tex.Rev. Civ.Stat.Ann. art. 2292–2 or section 7.3 of the Rules of the Tarrant County Civil Service Commission. The Court finds that all claims of the Plaintiffs' are properly char-

---

5. In pertinent part, 42 U.S.C. § 1985(2) & (3) provides:

 (2) . . . [I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

 (3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

acterized as due process, not equal protection, claims.

"The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 101–102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (footnotes omitted). *See also Dowsey v. Wilkins*, 467 F.2d 1022 (5th Cir. 1972).

*Hamilton v. Chaffin*, 506 F.2d 904, 914 n.23 (5th Cir. 1975). There are no allegations of class-based discrimination in the present action.

■ Accordingly, the Court concludes that Plaintiffs have no cause of action under section 1985. And where no cause of action has been established under section 1985, no claim for relief will lie under 42 U.S.C. § 1986, which creates a basis of action only in those situations where a person neglects or refuses to prevent a violation of section 1985. *Hamilton*, 506 F.2d at 913–914; *Tollett v. Laman*, 497 F.2d 1231, 1232–1233 (4th Cir. 1974), *cert. denied*, 419 U.S. 1088, 95 S.Ct. 678, 42 L.Ed.2d 680 (1974); *Dowsey*, 467 F.2d at 1026; *Hahn v. Sargent*, 388 F.Supp. 445, 449–450 (D.Mass. 1975).

## VI.

### 42 U.S.C. § 1983

The final basis of action claimed by Plaintiffs is 42 U.S.C. § 1983.[6] For a cause of action to lie under section 1983, the plaintiff must have been deprived of "any rights, privileges, or immunities secured by the Constitution and laws." Plaintiffs here contend that they were deprived of employment without due process of law, and that their rights to employment and unblemished professional reputations constitute

property rights and liberty within the scope of those interests protected by the Constitution.

The determination, by a weighing process, of the form of hearing required in particular circumstances by procedural due process is secondary to the determination that the claimed deprivation involves those interests encompassed by the Fourteenth Amendment's protection of liberty and property. The range of interests protected by procedural due process is limited, and the Court must first examine the nature of the interest at stake to determine whether it rises to the level of Fourteenth Amendment protection.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), is the primary Supreme Court case setting forth general criteria for determining when an individual's concern in property or liberty rises to the level of a constitutionally protected interest. This Court has previously had occasion to apply the *Roth* standards in *Bradford v. Tarrant County Jr. College Dist.*, 356 F.Supp. 197 (N.D.Tex.1973), *aff'd*, 492 F.2d 133 (5th Cir. 1974).

### A. Property Interest

In *Roth*, a college professor had brought an action against a state college for failure to renew his teaching contract without first providing him with a hearing. The Supreme Court there stated:

Certain attributes of "property" interests protected by procedural due process emerge from . . . [prior Supreme Court] decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the

---

**6.** 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

ancient institution of property to protect those claims upon which people rely in their daily lives, . . .

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. . . .

*Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

The Supreme Court then pointed to the possible sources for a claim of entitlement to re-employment: the terms of the employment agreement, a state statute, an organizational rule or policy, or a "common-law" of action by the state organization so strong as to constitute a *de facto* rule or an implied contractual term. *See Roth*, 408 U.S. at 564 & n. 16, 92 S.Ct. at 2702, 33 L.Ed.2d at 552; *Perry v. Sindermann*, 408 U.S. 593, 601–603, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570, 579–580 (1972). The *Roth* petitioner's abstract concern in being rehired did not rise to the level of a property interest because no claim of entitlement to re-employment could be found in any of these sources.

Plaintiffs in the present case did not enter into any written contract of employment. Neither party has offered any evidence as to whether a method of dismissal was even discussed between Plaintiffs and Defendants. The Court is therefore forced to assume that it was not. There has been no rule or policy of the Tarrant County Adult Probation Office concerning dismissals brought to the attention of the Court by either party. Accordingly, Plaintiffs must rely on state statutes or "common-law" procedure in the Office in order to have a valid claim of entitlement to a hearing prior to dismissal.

### 1. Article 2372h–6

Tex.Rev.Civ.Stat.Ann. art. 2292–2, as previously discussed,[7] sets forth the make-up and the procedure for employment and dismissal within the Tarrant County Adult Probation Office. Article 2292–2 is intricately related to Tex.Code Crim.Proc. art. 42.12.[8] The survival of article 2292–2 as a special statute setting the Tarrant County Adult Probation Office apart from all other probation offices in the State of Texas appears to be a mere quirk of legislative concern over funding. Article 2292–2 itself affirmatively expresses the intent of the Texas legislature that the purpose and role of the Adult Probation Office is to be the same in Tarrant County as it is in the rest of the state.

Tex.Rev.Civ.Stat.Ann. art. 2372h–6 authorizes the establishment of civil service systems in counties of 300,000 or more population. Under section 8 of article 2372h–6,

7. See note 2 *supra* and accompanying text.

8. Tex.Code Crim.Proc. art. 42.12 provides in pertinent part:

Sec. 1. It is the purpose of this Article to place wholly within the State courts of appropriate jurisdiction the responsibility for determining when the imposition of sentence in certain cases shall be suspended, the conditions of probation, and the supervision of probationers, in consonance with the powers assigned to the judicial branch of this government by the Constitution of Texas.

\* \* \* \* \* \*

Sec. 10. For the purpose of providing adequate probation services, the district judge or district judges having original jurisdiction of criminal actions in the county or counties, if applicable, are authorized, with the advice and consent of the commissioners court as hereinafter provided, to employ and designate the titles and fix the salaries of probation officers, and such administrative, supervisory, stenographic, clerical, and other personnel as may be necessary to conduct presentence investigations, supervise and rehabilitate probationers, and enforce the terms and conditions of probation. . . .

Where more than one probation officer is required, the judge or judges shall appoint a chief adult probation officer or director, who, with their approval, shall appoint a sufficient number of assistants and other employees to carry on the professional, clerical, and other work of the court.

The judge or judges, with the approval of the juvenile board of the county, may authorize the chief probation or chief juvenile officer to establish a separate division of adult probation and appoint adult probation officers and such other personnel as required. . . .

the county civil service commission is authorized and required to "make, publish, and enforce rules." Section 9 of the statute provides for appeals from final decisions of the commission to the state district court for that county. It was under the authority of this statute that the Tarrant County Commissioners Court created the Tarrant County Civil Service System and adopted its Rules.

■ Though there is an apparent void of Texas caselaw on the interrelation of article 2292–2 or article 42.12 with article 2372h–6, the Court is guided by two Opinions of the Attorney General of Texas—No. H–619 (Letter to Hon. Henry Wade—28 May 1975) and No. H–672 (Letter to Hon. Tim Curry—22 August 1975). While Texas attorney generals' opinions do not carry the decisive weight of caselaw, they are entitled to careful consideration by the courts and are generally regarded as highly persuasive. *Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 87 n. 10, 95 S.Ct. 870, 877, 43 L.Ed.2d 32, 41 (1975); *Jones v. Williams,* 121 Tex. 94, 98, 45 S.W.2d 130, 131 (1931); *City of Houston v. Southern Pacific Transportation Co.,* 504 S.W.2d 554, 557 (Tex.Civ. App.—Dallas 1973, writ ref'd n. r. e.).

The question posed in Opin. No. H–619 was whether adult probation officers in Dallas County, Texas, came under the County Civil Service Act. In Opin. No. H–672, the question was whether juvenile probation officers in Tarrant County, Texas, were "employees" under the same Act.[9] The Attorney General reasoned in both opinions that article 2372h–6 was inconsistent with the statutory purpose of vesting supervision of probationers within the control of the appropriate Judges. Accordingly, the Attorney General concluded in both opinions that the probation officers in question were not subject to the county civil service commission.

■ The purpose of article 42.12, as stated in section 1, is "to place wholly within the State Courts of appropriate jurisdiction the responsibility for . . . the supervision of probationers . . .." Article 2292–2, § 1 states that its purpose is that "of effectively carrying out the adult probation and parole laws of this State . . .." Texas caselaw supports the proposition that the judicial independence in supervising probationers called for by the probation statutes requires financial and administrative independence from other state governmental entities and regulations. *See Commissioners Court of Hays County v. District Judge,* 506 S.W.2d 630 (Tex.Civ. App.—Austin 1974, writ ref'd n. r. e.); *Commissioners Court of Lubbock County v. Martin,* 471 S.W.2d 100 (Tex.Civ.App.— Amarillo 1971, writ ref'd n. r. e.).

It is certain that the manifest intent of the Legislature in enacting Art. 42.12 was to invest in the district judges great responsibility for carrying out a proper probation program in the respective judicial districts, and to empower them with the authority to do so. In conformity with the purpose and assigned responsibility, the Legislature, in Sec. 10, imposed upon the judges the further responsibility of appointing probation officers and designating their salaries.

*Martin,* 471 S.W.2d at 107.

■ This Court agrees with the logic of the Attorney General's opinions that the purposes of the probation statutes are inconsistent with the rules regarding employment and dismissal of employees adopted under the County Civil Service Act. The court's responsibility for the supervision of probationers includes these facets of employment and dismissal of probation officers.

Accordingly, the Court holds that Plaintiffs are not "employees" within the purview of the County Civil Service Act, and that article 2372h–6 and the Rules of the Tarrant County Civil Service Commission fail to provide Plaintiffs with any claim of entitlement to a hearing prior to dismissal.[10]

---

9. All juvenile probation offices in the State of Texas are provided for by Tex.Rev.Civ.Stat. Ann. art. 5139. Tarrant County is not specially excepted from this statute.

10. Having reached this conclusion, the Court need not consider whether the meetings of the Tarrant County Commissioners Court and the Tarrant County Civil Service Commission complied with the Texas Open Meetings Law.

### 2. Article 2292–2

Article 2292–2 provides in the second paragraph of section 1 that the "Judges *may* appoint assistant probation and parole officers and such other employees as they deem necessary to serve in the Adult Probation Office." (emphasis added). In the next paragraph, that section states that "[s]uch officer and all other employees of the Adult Probation Office *shall* be subject to removal at the will of the majority of the Judges." (emphasis added).

Plaintiffs have seized on the distinction between "may" and "shall" in the two phrases quoted to argue that while the Criminal and District Judges of Tarrant County may delegate the authority to employ individuals, they must personally act as a body to dismiss employees. Plaintiffs therefore conclude that they were entitled to a hearing before a meeting of the Judges prior to their dismissal.

Plaintiffs' contentions, however, cannot stand the test of common sense. It is true, as a general rule of statutory construction, that the term "shall," in the proper context, may place an absolute and nondelegable duty on a person or entity. In delineating a method of removal of employees, however, article 2292–2 is conferring a right and an immunity, not a duty, on the Judges. *See generally* Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning,* 23 Yale L.J. 16 (1913). Had the Texas Legislature stated that employees "shall be removed" by the Judges, it would have been respectably arguable that the legislature intended to impose on the Judges the duty of personally removing the employees. But under article 2292–2, the employees "shall be subject to removal" at the will of the Judges. The "shall be subject to" language is clearly a statement of a right to remove with immunity from other statutory considerations (such as civil service), not of a duty to remove. A reading of the phrase in question in the full context of

article 2292–2 further supports the conclusion that it is intended to be read as an immunity, not a duty. *Cf.* article 42.12 (which does not even provide for dismissal, but specifically provides for delegated authority to hire).

The Court accordingly holds that under article 2292–2 Plaintiffs were not entitled to a hearing before the Criminal and District Judges of Tarrant County prior to their dismissal, and that article 2292–2 cannot serve as a source for any claim by Plaintiffs that they were denied procedural due process in their dismissal.

### 3. "Common-Law" Procedure

Plaintiffs have failed to make out a claim that the "common-law" procedure or common course of action in the Tarrant County Adult Probation Office was to accord employees with hearings prior to dismissal.

What Plaintiffs have provided the Court with is a quantity of evidence concerning the fact that Plaintiffs took the Tarrant County Civil Service exam and followed other Civil Service procedures. Such evidence, however, does not go to the relevant issue. A mere "unilateral expectation" that Civil Service rules would be applied is insufficient to raise Plaintiffs' concerns to the level of property interests.[11] *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 560. It is necessary in order to demonstrate a property interest in a hearing prior to dismissal that such hearing was secured by a binding understanding with the Tarrant County Probation Office or that the Office followed a *de facto* policy of providing such hearings. *Perry v. Sindermann,* 408 U.S. 593, 599–600, 92 S.Ct. 2694, 2698–2699, 33 L.Ed.2d 570, 578–579 (1972). Plaintiffs have not attempted to make out such a claim.

Accordingly, the Court holds that Plaintiffs have been denied no property interest by the lack of a hearing prior to their

---

11. Moreover, it is undisputed that Plaintiffs knew that they were being hired to fill positions in a program financed by federal funding on a year-to-year basis.

dismissal, and that their procedural due process rights have not been violated.

### B. Liberty

Plaintiffs contend that their professional reputations have been blemished by their dismissals, and that their liberty to seek employment in the market place has thus been curtailed.[12]

There are four recent Supreme Court decisions discussing deprivation of liberty and denial of procedural due process in damaging an individual's reputation and standing in the community. In *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the Court held that a state statute authorizing the practice of "posting" an individual's name as an excessive drinker was unconstitutional because it failed to provide procedural safeguards of notice and an opportunity for a prior hearing. In that case, the Court stated:

> Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. . . .

*Constantineau*, 400 U.S. at 437, 91 S.Ct. at 510.

The next year, in *Roth*, a case that has been discussed *supra*, the Supreme Court held that a professor who, without a hearing, had not been rehired by a state college had not been denied procedural due process. In *Roth*, the Court elaborated on the factors necessary to require a procedural due process hearing.

> There might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated. But this is not such a case.
>
> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal

of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. . . . In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's "good name, reputation, honor, or integrity" is at stake.

> Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. . .

> \* \* \* \* \* \*

> . . . It stretches the concept too far to suggest that a person is deprived of "liberty" when he simply is not rehired in one job but remains as free as before to seek another.

(footnotes and citations omitted). *Roth*, 408 U.S. at 573–575, 92 S.Ct. at 2707–2708. The Court went on to note that it was improper for the district court to assume that non-retention would create practical difficulties for the professor in his subsequent academic career.

> . . . There is no suggestion of how nonretention might affect the respondent's future employment prospects. Mere proof, for example, that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to deprivation of "liberty." *Cf. Schware v. Board of Bar Examiners*, 353 U.S. 232 [77 S.Ct. 752, 1 L.Ed.2d 796].

*Roth*, 408 U.S. at 574 n. 13, 92 S.Ct. at 2708. Further, the Court noted that even where

---

12. Plaintiffs have made no assertion that their First Amendment rights have been violated. They claim that they were wrongfully dismissed because they refused to comply with a

Tarrant County Adult Probation Office policy that they term "racist," not because of anything they might have said or written.

procedural due process requires a hearing, lack of a hearing prior to dismissal does not necessarily entitle a plaintiff to reinstatement or damages.

The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons.

*Roth*, 408 U.S. at 573 n. 12, 92 S.Ct. at 2707.

In *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that suspension from school based upon charges of misconduct could trigger the procedural guarantees of the Fourteenth Amendment. In *Goss*, a state statute granted the plaintiffs the right to attend public school, and the charges of "misconduct" were entered on the students' records.

Finally, in the most recent case before the Supreme Court, *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, 44 U.S.L.W. 4337 (March 28, 1976), the Court held that the petitioner's interest in his reputation, which had been damaged by the inclusion of his name on a flyer listing individuals suspected of shoplifting, was neither "liberty" nor "property" within the Fourteenth Amendment. The *Paul* decision reviews the caselaw concerning defamation of reputation under section 1983, and establishes three factors necessary to maintain such an action: (1) actual defamation; (2) governmental action depriving the individual of a right previously held under state law; and (3) occurrence of the defamation in the course of the governmental action. *Paul*, 424 U.S. at 699–710, 96 S.Ct. at 1159–1164, 47 L.Ed.2d at 411–418, 44 U.S. L.W. at 4339–4342.

Plaintiffs here have not met any of the three elements necessary to establish the need for a procedural due process hearing prior to termination. There has been no actual defamation. The only reason given for the dismissals was that Plaintiffs had proved to be "unsatisfactory" employees.[13] No reason was ever given by Defendants or placed on the records of the Tarrant County Adult Probation Office that would seriously damage Plaintiffs' professional reputations. Plaintiffs' contention that the mere fact that they were dismissed would damage their reputations has been rejected by the *Roth* Court. Further, this Court has already determined that Plaintiffs had no right under state law to a procedural due process hearing. And since the first two elements are lacking, the third is necessarily lacking.

The Court therefore concludes that Plaintiffs' concerns over the damages to their reputations does not amount to a deprivation of "liberty" requiring a procedural due process hearing.

## VII.

## ORDER

Accordingly, the Court ORDERS that Defendants' motions to dismiss with respect to Plaintiffs' causes of action under 42 U.S.C. §§ 1982, 1985, & 1986 be granted. The Court further ORDERS that Defendant's motion for summary judgment with respect to Plaintiffs' causes of action under 42 U.S.C. § 1983 be granted.

---

**13.** The Employment History record of each Plaintiff shows under the heading "REASON FOR CHANGE OR TERMINATION" that he was "Terminated—Unsatisfactory." On each Plaintiff's Tarrant County Report of Separation from Department, the box beside the line that reads "Dismissal of temporary Employee as Unsatisfactory" has been checked. That line had been partially deleted and altered to read as it presently does. No further comments regarding the dismissals were given in the space provided for "Remarks." No other notations of any reason for dismissal appear in Plaintiffs' Tarrant County personnel files. It appears the term "unsatisfactory" is a standard term with no special significance generally given as the reason for dismissals. "Unsatisfactory" is not the sort of term that would seriously damage Plaintiffs' standing and associations in the community or would impose on them a stigma that would foreclose their freedom to take advantage of other employment opportunities.

The Court therefore, ORDERS and AD-JUDGES that the above-referenced action be dismissed.