Randy DOWSEY, by his father and next friend Paul Dowsey, Plaintiff-Appellant,

v.

Taylor WILKINS, individually and as Sheriff of Baldwin County, Alabama, et al., Defendants-Appellees.

No. 72-2073

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 25, 1972.

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 431 F.2d 409, Part I (5th Cir. 1970).

Robert F. Clark, E. Graham Gibbons, Mobile, Ala., for plaintiff-appellant.

G. Sage Lyons, Mobile, Ala., Tolbert M. Brantley, Taylor D. Wilkins, Jr., Bay Minette, Ala., Ralph Kennamer, Mobile, Ala., for defendants-appellees.

Before BELL, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Randy Dowsey, the appellant, brought this action founded upon 42 U.S.C.A. §§ 1983,[1] 1985(3),[2] and 1986[3] against the Sheriff of Baldwin County, Alabama, and the Chief of Police of Fairhope, Alabama. The District Court granted the motion of defendants-appellees for a directed verdict on all counts upon the conclusion of the presentation of Dowsey's proof. We reverse as to the cause of action predicated on Section 1983 and affirm the remainder of the trial court's action.

Dowsey, seventeen years old at the time of the events complained of, was in the company of three other youths when one of his companions, Robberson, became suddenly ill. Shortly after the car the group was using had been parked on a high school campus, the principal of the school came to investigate the reason for their presence. Upon detecting that Robberson could not be aroused, he called the Bay Minette, Alabama police department. Officers took the stricken and then unconscious youth to a hospital. At the request of the Bay Minette police, Dowsey went along to the hospital where he was examined by a doctor. The doctor found no evidence that Dowsey had taken any drugs and he was released. Early that same afternoon an officer of the nearby Fairhope, Alabama police department picked up Dowsey and his companions at the home of one of the boys in Fairhope and took them to the Fairhope police station. Several hours of questioning

1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. (3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy,

whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

3. Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

by the Sheriff and the Chief of Police followed, which focused upon whether any of the group had knowledge which might aid in the treatment of the unconscious Robberson, who doctors suspected was the victim of some type of drug. Later in the afternoon Dowsey's mother, upon learning that her son was at the police station, came to the station and was permitted to talk to her son. During the process of questioning by the Sheriff and his mother, Dowsey suddenly ran from the police station. The Sheriff shouted, "Stop that boy!" A City of Fairhope policeman, who is not a party to this action, was just alighting from an automobile in front of the station when he heard the shout and saw Dowsey. He tried to grab Dowsey but was unable to hold him. The policeman pursued the fleeing Dowsey and shot him twice in the legs.

This review of the proof demonstrates that Dowsey produced sufficient evidence to warrant the submission of his § 1983 action to a jury. He had been picked up by a uniformed police officer and taken to the police station. He was questioned repeatedly over a period of hours, in spite of his insistence that he had no knowledge of any drugs taken by Robberson. While he was never told that he was under arrest or charged with an offense and was never refused permission to leave or to use the telephone, Dowsey testified that he heard another of the boys request permission to make a call and heard that request denied. He also testified that the Sheriff threatened to put him in jail and keep him there until he was twenty-one years old unless he told what drug Robberson had taken. That Dowsey may have been justified in his belief that he was not free to leave is most vividly told by the tragic consequences of his only attempt to exercise this freedom.

■■ The Sheriff and Chief of Police contend that they acted only in an attempt to save Robberson's life and thus are entitled to use their good faith as an absolute defense. This is an erroneous view of the law of false imprisonment.

No matter how laudatory the motives of the Sheriff and the Chief of Police may have been, such motives alone are not sufficient to arm them with a privilege to detain and interrogate a citizen for hours, threaten him with jail unless he tells them what they want to know, and then attempt to prevent his leaving the place of interrogation and detention if there is no underlying right to deprive that person of his freedom.

■■■ Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), held that an officer's assertion of a reasonable good faith belief that he had probable cause to arrest created a jury issue in a Section 1983 action against him for false arrest and imprisonment. In reasoning to this result, the Supreme Court emphasized that actions under Section 1983 were analogous to tort actions and therefore a defense which would establish that no tortious wrong had in fact been committed was equally available in either type suit. This kind of good faith would be as applicable to a defendant in a Section 1983 action for false imprisonment unaccompanied by any claim of false arrest. However, mere good intentions which do not give rise to a reasonable belief that detention is lawfully required cannot justify false imprisonment whether the action is founded in tort or under Section 1983. *See* Whirl v. Kern, 407 F.2d 781, 790–791 (5th Cir. 1969), cert. denied 396 U. S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969). As a corollary, the plaintiff here need not show malice or ill-will to prove his action under Section 1983. All that is required is that he demonstrate state action which amounts to an actual deprivation of Constitutional rights or other rights guaranteed by law. Pierson v. Ray, *supra*; Whirl v. Kern, *supra*.

■■ Should the officers in this case assert that their actions in dealing with the plaintiff were taken under circumstances which lawfully justified the degree of detention and custodial interrogation they contend was employed, they are entitled to have the jury resolve

that issue under proper instructions which define the rights of one in plaintiff's situation to be free of official detention and set out the circumstances which would support a reasonable good faith belief by the defendants that they had the legal right or duty to deprive him of his freedom. Of course an officer also has a right to show all conditions which surrounded his actions, in order to mitigate any damages that might be assessed against him.

■ Dowsey's proof presented a sufficient factual basis from which a jury could have concluded that the official actions of the defendants unlawfully deprived him of rights, privileges, and immunities secured by the Constitution and laws of the United States. While a jury was not bound to resolve all conflicts in Dowsey's version of the facts most favorably to his position, the trial court was required to do so for the purpose of considering the motion for a directed verdict. The District Court erred in directing a verdict on this issue. *See* Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969). On the basis of the plaintiff's proof, this case was simply not one which permitted a directed verdict for either party.

■ We agree with the District Court that Dowsey introduced no evidence to support his claim that a conspiracy existed which was designed or intended to deprive him of equal protection of the laws, or of equal privilege and immunities under the laws. The Supreme Court, in discussing the scope of 42 U.S.C.A. § 1985(3), has stated:

It is thus evident that all indicators —text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies. That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others.

For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally the words of Representative Cook, emphatic that they did not believe, in "that Congress has a right to punish an assault and battery when committed by two or more persons within a State." . . . The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all. (Emphasis in original.) Griffin v. Breckenridge, 403 U. S. 88, 101–102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (footnotes omitted).

Even conceding for the sake of our review that the treatment appellees visited upon Dowsey was as odious as he contends, such actions are not sufficient to constitute a denial of equal protection which will support an action under Section 1985(3). Because of a failure to establish any § 1985 right, the interrelated, dependent cause of action under Section 1986 was also correctly dismissed. We affirm that part of the District Court's order which directed a verdict for defendants on the causes of action premised on Sections 1985(3) and 1986.

Affirmed in part, reversed in part and remanded.