**Leon JOHNSON, Plaintiff-Appellee,**

v.

**R. J. GREER, Defendant-Appellant.**

**No. 72–2541.**

United States Court of Appeals,
Fifth Circuit.

April 2, 1973.

Rehearing Denied April 24, 1973.

James Greenwood, III, Houston, Tex., for defendant-appellant.

John K. Meyer, Houston, Tex., for plaintiff-appellee.

Before ALDRICH,* SIMPSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Johnson brought this action under 42 U.S.C. § 1983, contending that Greer, as Administrator of the Psychiatric Diagnostic Clinic, falsely imprisoned him and thereby denied him his constitutional right to liberty and due process of law. Johnson sought damages for deprivation of freedom and for a shoulder injury suffered when orderlies attempted to administer medication to Johnson while he was detained at the Clinic. The jury found for Johnson on most of the Fed. R.Civ.P. 49(a) special verdict issues

---

* Hon. Bailey Aldrich, Senior Circuit Judge of the First Circuit, sitting by designation.

submitted to them, separately assessing the damages for false imprisonment at 700 dollars and the damages resulting from the shoulder injury at 11,300 dollars. Judgment accordingly was entered. There is an adequate basis in law and in record proof to support the finding of false imprisonment. However, the jury was given an improper test to use in determining if Johnson's shoulder injury was a proximate result of such false imprisonment. We therefore affirm in part, vacate in part, and remand for a new trial as to all damage verdicts.

Although the exact details of the preliminary encounter are unclear, Johnson either volunteered himself or was taken into the custody of the police complaining of hearing voices and music which were in fact imaginary. It further appears that he requested the police officers to lock him up somewhere where he would not hear the voices and music. These officials placed him in a cell where he was examined by a psychiatrist who concluded that he was suffering from toxic delirium. On the basis of this examination and diagnosis, the police procured an emergency protective custody warrant from a Justice of the Peace. Pursuant to that warrant Johnson was admitted to the Clinic which Greer administers. Under Texas statutes, which supplied Greer's whole authority to take Johnson into custody, Johnson could have been detained under this emergency warrant for a period not to exceed 24 hours.[1] After the expiration of 24 hours further necessary detention could have been authorized by an order of the appropriate court.[2] Though Johnson was ultimately detained for approximately five consecutive days, no further order from any court was obtained during that period.

■ We find no merit in Greer's contention that Johnson was not unlawfully detained at the Clinic. After the 24-hour detainment authorized by the initial warrant had expired, Greer was under an obligation either to seek authorization from the Texas courts to detain Johnson for a further period of time, as required by the Texas statute, or to release him. While it may well be that Greer had the right to detain Johnson for a reasonable period of time to obtain the necessary court order, the jury found in response to a special verdict question that his delay in procuring the warrant became unreasonable at a time 24 hours after his initial authorization to retain Johnson had expired (*i. e.*, after Johnson had been detained for a total of 48 hours).

■ Since it is admitted that Greer was acting "under color of law" as Administrator of the Clinic, his actions in depriving Johnson of his constitutional right to liberty provide ample basis for this action under 42 U.S.C. § 1983. *See* Dowsey v. Wilkins, 467 F.2d 1022 (5th Cir. 1972); Whirl v. Kern, 407 F.2d 781 (5th Cir. 1972), cert. denied, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969).

■ Our jurisdiction in this action is to be exercised under the statutory and decisional laws of the United States "so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies" the laws of Texas shall govern. 42 U.S.C. § 1988. Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946). *See also* Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) and Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961). We see no deficit in the federal law as to efficacy or remedy and base our decision accordingly.

■ It is no defense to this action that Greer may have intended only to protect Johnson and others from possible injury.

1. Vernon's Tex.Rev.Civ.Stat.Ann. art. 5547–27 (Supp.1972).

2 Vernon's Tex.Rev.Civ.Stat.Ann. art. 5547–66 (1958).

[G]ood intentions which do not give rise to a reasonable belief that detention is lawfully required cannot justify false imprisonment whether the action is founded in tort or under Section 1983. . . . As a corollary, the plaintiff need not show malice or ill-will to prove his action under Section 1983. All that is required is that he demonstrate state action which amounts to an actual deprivation of Constitutional rights or other rights guaranteed by law.

Dowsey v. Wilkins, *supra*, 467 F.2d at 1025. Rather than adhering to the statutory procedure and obtaining a court order to detain Johnson, Greer failed to even attempt to follow the provisions of that law intended to protect the rights and liberty of those who are or are thought to be mentally ill. We affirm the judgment of the court below insofar as it adjudged Greer liable to Johnson for false imprisonment. However, because of the ultimate disposition of the case, we vacate the portion of the final judgment assessing damages for this wrong and remand that issue for retrial.

The more difficult question in this case is that of Greer's responsibility for the injuries suffered by Johnson during his confinement. Well after the expiration of the 48 hour period of reasonable detention found by the jury, Johnson was injured in an altercation with two orderlies at the Clinic. During this incident, which apparently occurred when Johnson irrationally resisted the administration of medication, he received the shoulder injuries of which he complains.

■■ On this appeal Greer contends that even if he was guilty of falsely imprisoning Johnson, such imprisonment was not a proximate cause of Johnson's shoulder injury. Casting his argument in terms of foreseeability, as he did in his objection to the instruction given by the court below, he argues that no reasonable man could have anticipated that physical injury would be a proximate result of Johnson's imprisonment. This

was not the legal standard which governed this phase of the case in the trial court. The only formula which the jury instruction fixed for testing Greer's liability for Johnson's shoulder injury was the following:

An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case, that the act or omission played a substantial part in bringing about or actually causing the injury or damage; and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.

This does not mean that the law recognizes only one proximate cause of an injury or damage, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons, may operate at the same time, either independently or together, to cause injury or damage; and in such a case, each may be a proximate cause.

Thus that court evidently agreed with those courts and treatises which indicate that the tort feasor in a false imprisonment action may be liable for damages which are not anticipated, apprehended or foreseen, so long as they are natural and probable or direct consequences of the intentional tort. While requiring the consequences to be "reasonably probable" or the result to be "direct" may have been intended as no more than another means of expressing foreseeability, we hold that this instruction erroneously advised the jury as to the standard of causal relationship between action and injury which would establish the defendant's liability.

■ In Whirl v. Kern, *supra*, this court noted in dealing with a Section 1983 action and a pendent state false imprisonment claim that the injury must be proximately related to the wrong, 407 F.2d at 797, and in Anderson v. Nosser, 456 F.2d 835, 841 (5th Cir. 1972) (en

banc) the court applied a test of foreseeability in a Section 1983 action founded on the imposition of summary punishment without due process of law. Neither of these cases, however, focused on the proper rule to be applied in determining whether the injury was proximately related to the wrong or a foreseeable consequence thereof. Thus, we look for guidance to "the prevailing view [of tort law] in this country" in determining the proper federal rule to apply to this case. Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L. Ed.2d 288 (1967); Whirl v. Kern, *supra*, 407 F.2d at 791.

In detailing our reasoning to the answer to the basic question—for what injuries should such a tort feasor be held responsible—we will not attempt to reconcile all of the varying judicial pronouncements on the subject, which differ more in semantics than in substance. The best start for an exposition of our reasoning is with this excerpt from a leading text writer:

> The term "proximate cause" is applied by the courts to those more or less undefined considerations which limit liability even where the fact of causation is clearly established. The word "proximate" . . . means nothing more than near or immediate; and when it was first taken up by the courts it had connotations of proximity in time and space which have long since disappeared. It is an unfortunate word, which places an entirely wrong emphasis upon the factor of physical or mechanical closeness. For this reason "legal cause" or perhaps even "responsible cause" would be a more appropriate term.
>
> \* \* \* \* \* \*
>
> It is quite possible, and often helpful, to state every question which arises in connection with "proximate cause" in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur? Such a form of statement does not, of course, provide any answer to the question, or solve anything whatever; but it does serve to direct attention to the policy issues which determine the extent of the original obligation and of its continuance, rather than to the mechanical sequence of events which goes to make up causation in fact. The question becomes particularly helpful in cases where the [question is] . . . whether the interests of the plaintiff are entitled to legal protection at the defendant's hands against the invasion which has in fact occurred. Or, again reverting, whether the conduct is the "proximate cause" of the result. The circumlocution is unavoidable, since all of these questions are, in reality, one and the same.

W. Prosser, Law of Torts 282–83 (1964) (footnotes omitted).

■■■■ We focus our opinion not on the metaphysical "but for" sequence of events preceding Johnson's injury but rather on the question of whether the principles of logic, fairness, and justice dictate the defendant should be held liable in a given situation. The cases are in accord that even a willful or intentional tort feasor does not become an insurer of the safety of those whom he has wronged. For example, if the Clinic had been destroyed by an earthquake, no one could rationally contend Greer should be liable for injuries befalling Johnson. On the other hand, the courts have generally held that where the acts of a defendant constitute an intentional tort or reckless misconduct, as distinguished from mere negligence, the aggravated nature of his action is a matter which should be taken into account in determining whether there is a sufficient relationship between the wrong and plaintiff's harm to render the actor liable. Specifically, the factors to be taken into account are the tort feasor's intention to commit a wrongful act, the degree of his moral wrong in so acting, and the seriousness of the harm intend-

ed. *See* Restatement of Torts, Second, § 435B; Prosser, *supra,* at 302. The touchstone for deciding the scope of the defendant's liability in a false imprisonment action properly brought under a federal statute is the intent and object of the officer in detaining the plaintiff. While, as we have iterated, mere good intentions do not in themselves create a defense to the action, *see* Dowsey v. Wilkins, *supra,* justice, fairness, and sound policy coalesce to indicate that an officer acting under color of law without malice or bad intent should be liable only for those injuries which an ordinarily prudent man would reasonably foresee would result from his actions. On the other hand, officers acting with malice or bad intent ought additionally to be held responsible for those injuries which have a more attenuated causal relationship to their willful misconduct. Thus, in a false imprisonment action brought under Section 1983, the tort feasor acting under color of law with malice or bad intent must be held responsible for all injuries which could have been prevented by the exercise of the utmost caution characteristic of very careful men, though even he remains insulated from injuries caused by wholly unforeseen accidents occurring without his agency. Nor is he responsible for injuries against which no human care or foresight could guard and which are not caused in any degree by his gross neglect or intentional conduct.

In addition to this objection based on the role of foreseeability in the definition of proximate cause, Greer directs another argument at the district court's instruction quoted above. The jury found that Johnson's physical injuries were proximately caused by his unlawful detention at the Clinic. The jury also found, however, that Johnson was mentally ill and was likely to cause injury to himself or others unless restrained. Though these two responses are not necessarily inconsistent, Greer urges that together they serve to point up a serious flaw in the court's instructions. Greer contends that there was no finding by the jury and no evidence on which any finding could be based that his actions in any way increased the already existing risk of injury that Johnson's mental state was causing.

■ Neither the bare fact that Johnson was injured while in Greer's care, nor the fact that it was foreseeable that some injury might occur during the hospitalization of a person who is disoriented and experiencing hallucinations, are sufficient to affix tort liability for an otherwise unintentional injury in the circumstances present here.

■ The correct rule of law to be applied to this case is indicated by analogy in the Restatement of Torts, Section 870.

> A person who does any tortious act for the purpose of causing harm to another or to his things or to the pecuniary interest of another, is liable to the other for such harm if it results, *except where the harm results from an outside force the risk of which is not increased by the defendant's act.* [Emphasis added.]

Comment "g" to that section amplifies this rule.

> Even where the defendant's act is in fact a cause of harm, in the sense that the harm would not otherwise have occurred, he is not liable to a person whom he intended to harm and who has been harmed, unless from the standpoint of a reasonable man, his act has in some degree increased the risk of that harm.

Though this section of the Restatement deals expressly with the necessary causal relationship between an intentional wrong and a resulting *intended* injury, *a fortiori* the principle applies where, as here, an *unintended* injury results from an intentional tort. The causal standard for liability for unintended injuries cer-

tainly should be no stricter than that applied in situations where the particular harm is intended.

 In light of the jury's finding that Johnson was liable to injure himself and others unless restrained, the trial court's instruction which defined the conditions of Greer's liability for injury is defective in that it didn't charge that the jury was required to determine whether Greer's actions increased the risk of injury. Greer could only be held liable if, using whatever standard of care he was bound to use, it was reasonably foreseeable that his action of improperly holding Johnson at the Clinic during his period of hallucinations would increase the risk of danger to Johnson. The evidence is such that a reasonable minded juror could have found that since Johnson was likely to hurt himself or others because of his condition, the risks associated with confinement at the Clinic did not increase Johnson's hazard of harm. Under the Seventh Amendment Greer is entitled to have this issue of fact determined by a jury as a prerequisite to the imposition of liability for this injury.

In other circumstances, the flexible and illuminating special verdict procedure followed here might also have allowed us to safely affirm the damage award with respect to false imprisonment and leave only the shoulder injury issues for retrial. However, the only sure course to preserve the jury process for both parties demands that the false imprisonment damage issue be also resubmitted since its amount could well be varied by the ultimate result of what is found as to the injury, i. e., should the jury conclude that Greer's actions were such that he should not be held liable for Johnson's shoulder injury or that Johnson's risk of physical harm was not increased by the detention, they well may determine that the amount of damages to be awarded on account of the detention alone should be altered.

Affirmed in part, vacated in part, and remanded.