*871 HIGGINSON, Circuit Judge,
concurring in the judgment:
Dicta in DeShaney v. Winnebago Cnty. Dep’t of Soc. Servs., 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), has contributed to twenty-three years of circuit (and intra-circuit) disharmony, and excited legions of law review articles, about whether the Constitution asserts positive or negative liberties, or regulates government action or inaction — all giving uncertain guidance to litigants and courts, as well as public officials, hence necessarily also giving uncertain relief to citizens whom government persons cause to be subjected to injury.
In this case, a plaintiff — father and his minor child Jane Doe (“Jane”), and others, complain that Jane was injured when unknown government actors (designated “EDUCATION DEFENDANTS A-Z”), among others, released her from public elementary school to an adult male (“Tommy Keyes”), who bore no relation to her and was not listed on her check-out form, who then raped her and returned her each time to school.
The district court dismissed this complaint as one that fails to state a legally cognizable claim. Our court today affirms that dismissal based on extensive, but nearly exclusive, discussion of the “special relationship” extra-statutory theory of liability adverted to by the Supreme Court in DeShaney. Although I agree that the enlargement of liability beyond Section 1983’s literal requirements contemplated by the “special relationship” test is not a basis for liability in this case, I write separately to redirect inquiry back to Congress’s exact language.
Section 1983 has a pedigree older than the harms it was found not to cover in DeShaney. Passed in 1871, Section 1983 reads:
Every person who, under color of [law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....
42 U.S.C. § 1983.
Set against this statutory language, the instant complaint makes a eonclusory, and I ultimately conclude not facially cognizable, claim. Plaintiffs do not complain that government persons subjected Jane to rape, but they come close to complaining that government persons caused her to be subjected to rape. If the complaint had asserted that the affirmative act of releasing Jane to Keyes was a causal act of recklessness or deliberate indifference or intentionality that caused her to be subjected to injury, and specifically to the deprivation of her right to bodily integrity, the complaint properly would proceed through discovery to trial.
The Supreme Court considered similar challenged government action in Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), nine years before DeShaney. In Martinez, the Court assessed a complaint filed against parole officials who had released a parolee who, five months later, tortured and killed a child. The Court explained that, “[a]lthough the decision to release Thomas from prison was action by the State, the action of Thomas five months later cannot be fairly characterized as state action” depriving the decedent of her right to life protected by the Fourteenth Amendment. Id. at 284-85, 100 S.Ct. 553. The Court further elaborated that:
We need not and do not decide that a parole officer could never be deemed to *872 ‘deprive’ someone of life by action taken in connection with the release of a prisoner on parole. But we do hold that at least under the particular circumstances of this parole decision, appellants’ decedent’s death is too remote a consequence of the parole officers’ [release] action to hold them responsible under the federal civil rights law.
Id. at 285, 100 S.Ct. 553. Jane was raped on numerous school days, each time after she was released to her assailant, whereafter he returned her to complete her school day. On the day of Keyes’ final rape, January 8, 2008, Jane was released despite the fact that to check her out of school Keyes allegedly “stated that he was the minor’s mother” (emphasis added).
It may well be that a jury would conclude that an assault on the same day as a government release is too remote for causal attribution, if not in time then in location or circumstance. And a jury might always conclude that no more than negligent conduct was present, however tragic. See Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). But if a jury, not us, were to come to such conclusions, then we, as government persons, are not immunizing other government persons, here state public school officials, against accountability for their affirmative act of releasing Jane from school under whatever complicating, aggravating, or mitigating release circumstances might be developed through discovery and at trial. This assignment of decision-making responsibility to assess, check, or overlook government action as a cause-in-fact of an injury, and specifically a deprivation of a constitutionally protected right, is consistent with the choice made by electors who, through Congress in 1871, established that a cause of action exists when a government officer “causes to be subjected” a person to a “deprivation of any right[ ] ... secured by the Constitution .... ”
To the extent that our court contemplates this “causes to be subjected” statutory language before turning to DeShaney, it is in a footnote reference to our decision in Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443 (5th Cir.1994) (en banc), which recognized a constitutional right to bodily integrity “vouchsafed by the Fourteenth Amendment” against state action. The court today infers from that important truism that “Taylor is inapplicable here because the actual violation of Jane’s bodily integrity was caused by Keyes, a non-state actor” (emphasis added). But that conclusion substitutes this court for a jury in deciding one of three inter-related elements of Section 1983: (1) state action, as (2) the cause-in-fact of (3) a deprivation of right protected by the Constitution.[1] The conclusion also either constricts the statute^ — -and government accountability for wrongdoing — from cases where a government person causes a victim “to be subjected” to a violation, just to cases where the government person “subjects” the victim to the actual violation, or constricts even more by rewriting the statute to *873 make liable only government persons who actually “depriv[e]” others of rights secured by the Constitution.
Section 1983, as well as its historical moment and purpose, and as implied by the Supreme Court in Martinez, does not perceive only a divisible and binary world of government or non-government rights violations. Instead, these difficult cases arise often out of a grey zone where a government person’s alleged recklessness or deliberate indifference or intentionality is inextricably intertwined with a not-remote injury allegedly inflicted by a third person, the first (government person) causing the citizen to be subjected to injury by the second (non-government) assailant. See, e.g., Wood v. Ostrander, 879 F.2d 583, 589-90 (9th Cir.1989) (holding that a Section 1983 claim was triable when police arrested driver and impounded vehicle, leaving passenger alone in a high crime area at 2:30 a.m. who then was raped); Reed v. Gardner, 986 F.2d 1122, 1126-27 (7th Cir.1993) (holding that a Section 1983 claim was triable when police arrested and removed driver but left drunk passenger with keys who then drove off and killed and injured individuals in another car in a head-on collision).
I do not think that this court would argue, for example, that an intentional and knowing release by a government person to a self-proclaimed rapist would immunize the releaser from liability simply because the violation physically was inflicted by another. Perhaps there even would be little disagreement about permitting a Section 1983 complaint to proceed to discovery and trial if the complaint alleged that Keyes had had a no-contact order excluding him from Jane’s “check-out list,” coupled with a school policy that mandated identity verification against that check-out list, yet a government person intentionally or recklessly or with deliberate indifference still released Jane to Keyes who immediately raped her.
I write separately, therefore, to affirm and clarify that citizens gain the protection that they have given themselves, through Congress, against government persons who cause them to be subjected to deprivations which the Constitution and laws disallow. Section 1983 was passed in a time when this was a real and specific threat. Today, these “silver platter” or grey zone cases thankfully are rare, yet government persons, intentionally or recklessly or through deliberate indifference, must know they will be held blameful if they cause a citizen to be subjected to a rights deprivation even if the “actual violation” is inflicted by a third person, as would be true if, for example, a sheriff released a prisoner to a vengeful lynch mob.
To the extent that this statutory validation has added constitutional importance, beyond checking government wrongdoing, it is that it assigns to jury resolution difficult grey zone questions about state action and causality when the challenged government conduct combines in time and circumstance with third party activity to cause a constitutional injury. See Johnson v. Greer, 477 F.2d at 105-08; Anderson v. Nosser, 456 F.2d 835, 841 (5th Cir.1972) (en banc).
I do not mean to imply that DeShaney’s “special relationship” theory has no relevance. I ultimately conclude, concurring with the court, that the thrust of the plaintiffs’ complaint alleges that the depriving act was the government’s “failure to protect” Jane because of its discretionary identification check-out policy. To that extent, I agree that compulsory education laws did not force Jane into a custodial setting with Keyes so that her injury is attributable to school persons because of their policy failure to better protect chil *874 dren being released from school. The Supreme Court implied such extra-statutory, all-encompassing “special relationship” liability when the challenged government conduct is inactivity — so untethered by Section 1983’s cause-in-fact element — only in the unique, double-confining setting of government-controlled custody which gives opportunity to aggressor-inmates and denies opportunities for self-defense to inmate-victims. Whereas post-DeShaney “special relationship” doctrine reads into the Fourteenth Amendment, at least for purposes of Section 1983 liability, a duty of protection when government-ordered custody makes self-help impractical or impossible, looking only at the victim and the victim’s relationship to the government invites anguishing comparisons between whether a foster child is more or less helpless than a schoolchild, see Griffith v. Johnston, 899 F.2d 1427, 1439 (5th Cir. 1990) (extending “special relationship” theory of liability to placement of children in foster care), as well as unanswerable questions of moral duty and the perils of indifference. It may well be that nine-year-old Jane, like Joshua DeShaney, was no less helpless than an adult prison inmate, but for Section 1983 to make actionable government inaction, under the DeShaney “special relationship” theory, liability should attach only when the government has complete physical control of victims and their aggressors, as in prison, but unlike in schools or foster home circumstances.
The literal language approach, if persuasive to others, might also tighten DeShaney helpfully in a second sense. Every other court of appeals to have considered the issue, except us, has embraced the expanded claim of liability termed “state-created danger,” which also derives from dicta in DeShaney. We have avoided this second judicial enlargement of liability presumably because its loose articulation (shielding persons from “perils” and “vulnerabilities” and “harm’s way” said to be “created by” government action), like the “special relationship” theory, also was not the result of the lawmaking process. Moreover, the existence of this ill-defined notion of government liability has provided a leaky bucket for the grey zone cases that properly should go to a jury as to state action and causation without any extra-statutory gloss which courts conjure. See Maj. Op. at 864 n.9 (listing complexity of “various multi-factor tests related to the state created danger theory”). Indeed, our court in this case highlights, in part, the confusion, stating, alternatively, that, “[w]e decline to use this en banc opportunity to adopt the state-created danger theory in this case because the allegations would not support such a theory.” The court goes on to write that, “we have stated the elements that such a cause of action would require,” and then quotes a medley of non-statutory “factors,” that include, but are not limited to, government creation of “ ‘a dangerous environment,’ ” government “ ‘deliberate indifference to the plight of the plaintiff,’ ” a “ ‘third party’s crime,’ ” a known and disregarded “ ‘excessive risk to the victim’s health or safety,’ ” and government “ ‘aware[ness] of an immediate danger facing a known victim.’ ” The instant allegations then are said not to “support such a theory.” It is unsurprising that no Section 1983 litigant in this circuit ever has been able to support such a theory.
To summarize, Section 1983 should be construed literally. Literal application of Section 1983 would narrow only to government custody the DeShaney “special relationship” theory of actionable inaction, as explicitly stated by the late Chief Justice Rehnquist, and literal application of Section 1983 would reduce only to statutory elements the amorphous “state-created *875 danger” theory we have not endorsed. At the same time, literal application of Section 1983 would (1) acknowledge that the statute protects not just against government persons who subject citizens to a constitutional deprivation but also against government persons who cause citizens to be subjected to such deprivations; (2) avoid government persons (courts) from immunizing other government persons (state or local officials) from liability for wrongdoing which electors, through Congress, have made actionable and which non-government persons (jurors) should resolve; and (3) would apply Section 1983’s syntax to comprehend the rare but tragic set of grey zone cases where government persons, intentionally or recklessly or through deliberate indifference, cause, consistent with Martinez, a victim to be subjected by a third person to a rights deprivation.
Having made the above statutory observation — urging narrowed liability on extra-statutory theories emanating from dicta in DeShaney, but recognizing liability for government persons who non-negligently cause in time and circumstance citizens to be subjected to constitutional injury actually inflicted by others — I nonetheless conclude that the instant complaint, put alongside the plain language of Section 1983, is not congruent enough to survive summary dismissal. Instead of setting forth a facially plausible charge of government recklessness or indifference or intentionality in the release of Jane that caused her to be subjected to her injury, the complaint’s preliminary statement (paragraph 1), statement of facts (paragraphs 2-7), and above all its “[b]ut for” allegation in its “action for deprivation of civil rights” (paragraphs 20-25), focus exclusively on the opposite, namely the education defendants’ alleged policy of inaction, giving school officials who check out children discretion to verify or not to verify the identification of receiving adults. That contention describes liability non-causally, which is the extra-statutory theory of liability recognized by the Supreme Court to apply only in custodial settings.
For the above reasons, I concur in the judgment of the court.

. In any Section 1983 complaint, the challenged conduct must be conduct taken under color of state law because, as the Supreme Court held in United States v. Cruikshank, 92 U.S. 542, 544, 23 L.Ed. 588 (1885), when purely private conduct causes injury, the Fourteenth Amendment is not implicated. Here, therefore, what is challenged is the government's conduct releasing Jane. Whether that government conduct is too remote from the child’s injury, in turn, is the statutory question of causation which, under Martinez, I contend can and should generally be resolved by a jury, see Johnson v. Greer, 477 F.2d 101, 105-08 (5th Cir.1973), with the DeShaney proviso that government inaction— a failure to protect — may alone be actionable, hence causal pursuant to Section 1983, in the unique context of government-ordered custody-