| DEUTSCH BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERIQUEST MORTGAGE SECURITIES INC., ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2005-R4 | * | NO. 2023-CA-0747 |
| --- | --- | --- |
| | * | |
| | * | COURT OF APPEAL |
| | * | |
| | * | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |
| VERSUS | * * * * * * * | |
| MAYLOIS CONERLY PRICE, (A/K/A MAYLOIS CONERLY, MAYLOIS PRICE, MAYLOIS BACOT, MAYLOIS CONERLY BACOT) | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-00367, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Rachael D. Johnson)

Amanda S. Stout
McGLINCHEY STAFFORD, PLLC
One American Place, 14th Floor
301 Main Street
Baton Rouge, LA 70801

Stephen W. Rider
McGLINCHEY STAFFORD, PLLC
601 Poydras Street, 12th Floor
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLEE

Maylois C. Bacot
5696 Stillwater Drive
New Orleans, LA 70128

    *Pro Se*
    *PRO SE* DEFENDANT/APPELLANT

**AFFIRMED**
**April 23, 2024**

This appeal is a commercial litigation dispute arising out of an executory

proceeding. Defendant-in-Reconvention – Deustche Bank National Trust

Company, as Trustee for Ameriquest Mortgages Securities, Inc., Asset-Backed

Pass-Through Certificates, Series 2005-R4 ("Deutsche Bank") – filed a petition for

executory process to foreclose on a mortgage loan ("the Loan").[1] In response, the

Plaintiff-in-Reconvention – Maylois Bacot ("Ms. Bacot")[2] – filed a reconventional

demand against, among others, Deustche Bank.[3] In response, Deustche Bank filed

an exception of no cause of action. After a hearing, the trial court sustained the

exception and dismissed Ms. Bacot's claims. From this judgment, Ms. Bacot

appeals. We affirm.

---

[1] The caption includes one of the Appellee's company names as "Deustch" Bank, however, the correct spelling is "Deustche" Bank. In this opinion, we refer to it as Deustche Bank.

[2] The caption refers to Ms. Bacot as "Maylois Conerly Price"; in this opinion, we refer to her as Ms. Bacot.

[3] In addition to Deustche Bank, Ms. Bacot also named the following parties as defendants-in-reconvention (collectively "Defendants"): PHH Mortgage Services ("PHH"), and LOGS Legal Group, LLC ("LOGS") (then-known as Shapiro & Daigrepont, LLC), McGlinchey Stafford, PLLC ("McGlinchey") and Amanda Stout ("Ms. Stout").

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2005, Ms. Bacot signed a promissory note payable to the order of Ameriquest Mortgage Securities ("AMS") together with a mortgage as security for the note. PHH serviced the loan for Deustche Bank.[4] Over time, issues arose regarding Ms. Bacot's mortgage payments. On several occasions, she made her monthly payments untimely. Ms. Bacot and PHH entered into various loan modification agreements to help her meet her obligations. Nevertheless, Ms. Bacot failed to comply with the terms of the modification agreement. As a result, Deustche Bank filed a petition for executory process to foreclose on Ms. Bacot's home. On the previous appeal in this matter, *Deutsche Bank Nat'l Tr. Co. as Tr. for Ameriquest Mortgage Sec. Inc. v. Price*, 21-0430, p. 10 (La. App. 4 Cir. 12/15/21), 333 So.3d 1280, 1286 ("*Deustche Bank I*"), this Court held that Deustche Bank complied with the procedures necessary to foreclose by executory process and remanded this case for further proceedings.

On remand, Ms. Bacot filed a reconventional demand, which the trial court ordered severed from the executory process suit. Only Ms. Bacot's reconventional demand is at issue in this appeal.[5] Ms. Bacot makes the following allegations in her reconventional demand:

- PHH acted deceptively and failed to report note payments that Ms. Bacot had made. Further, PHH instructed her not to take action on

---

[4] Ocwen Loan Servicing, LLC ("Ocwen") was the original loan servicing company for Deustche Bank. In the time that has passed since Ms. Bacot executed the promissory note, Ocwen and PHH have merged, with PHH as the surviving entity. Thus, only PHH is mentioned in this opinion.

[5] Ms. Bacot filed an original and amended reconventional demand. In this opinion, we refer to both as "the reconventional demand."

her loan while they investigated her fraud claim. This advice resulted in a wrongful foreclosure initiated by Deustche Bank.

- Defendants discriminated against Ms. Bacot due to her disability and race.

- Defendants colluded against Ms. Bacot through deceptive business practices to fraudulently deprive her of her property. Defendants willfully and wantonly breached their duties and obligations owed to Ms. Bacot.

- Defendants' acts violated the following federal laws: 42 U.S.C. § 1985, 42 U.S.C. § 1986, 14th Amendment of the United States Constitution, the Fair Debt Collection Practices Act, the Fair Housing Act, the Fair Credit Reporting Act, and the Real Estate Settlement Procedures Act.

- PHH and Ms. Stout withheld discoverable information about the mortgage from Ms. Bacot.

- Ms. Stout violated the Louisiana Code of Civil Procedure and the Rules of Professional Conduct by failing to investigate the facts in this matter before filing for executory process and by filing false documentation.

- Deustche Bank and PHH filed and maintained false records and engaged in forgery.

In response to the reconventional demand, Defendants filed peremptory exceptions of *res judicata* and no cause of action.[6] After a hearing, the trial court sustained the exception of no cause of action and dismissed all of Ms. Bacot's claims against Defendants with prejudice. This appeal followed.

## STANDARD OF REVIEW

Appellate courts review a trial court's ruling on a peremptory exception of no cause of action using a *de novo* standard of review because the exception raises a question of law. *Herman v. Tracage Development, L.L.C.*, 16-0082, p. 4 (La.

---

[6] LOGS was not a party to the exception of no cause of action sustained by the trial court. Thus, Ms. Bacot's allegations against LOGS are not at issue on this appeal.

App. 4 Cir. 9/21/16), 201 So.3d 935, 939 (citations omitted). "The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading." *State, Div. of Admin., Office of Facility Planning & Control v. Infinity Sur. Agency, L.L.C.*, 10-2264, p. 8 (La. 5/10/11), 63 So.3d 940, 945-46 (citing *Ramey v. DeCaire*, 03-1299, p. 7 (La. 3/19/04), 869 So.2d 114, 118; *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1235 (La. 1993)).

## DISCUSSION

Although Ms. Bacot assigns four errors, the primary issue is whether the trial court erred in sustaining Defendants' exceptions of no cause of action and dismissing Ms. Bacot's reconventional demand. A second issue we consider is whether the trial court's judgment was procured by fraud on the court.[7] We divide our analysis into three parts: state law claims, federal law claims, and fraudulent judgment claims.

### *State Law Claims*

Ms. Bacot alleges that PHH's advice that she not take action on her loan while her fraud claim was investigated, coupled with Deustche Bank's filing of the petition for executory process, amounted to the following state law violations: negligence, tortious interference with contract, breach of contract, fraud, and abuse

---

[7] Ms. Bacot also presents the issue of whether the trial court violated her due process rights under the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution by sustaining the Defendants' exceptions of no cause of action. Because we affirm the trial court's judgment, we do not consider this issue.

4

of process. Ms. Bacot also alleges that Deustche Bank and PHH filed and maintained false records and engaged in forgery in violation of Louisiana criminal law. We address these state law claims as follows.

*Negligence and Contract Claims*

The Louisiana Credit Agreement Statute ("Credit Agreement Statute"), La. R.S. 6:1121, *et seq.*, provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and debtor." La. R.S. 6:1122. The Credit Agreement Statute further provides that "[t]he agreement of a creditor to take or not take certain actions such as entering into a new credit agreement, forbearing from exercising remedies under a prior credit agreement, or extending installments due under a prior credit agreement" shall not give rise to a claim that a new credit agreement is created unless the requirements of La. R.S. 6:1122 are satisfied. La. R.S. 6:1123(A)(3). "A credit agreement shall not be implied from the relationship, fiduciary, or otherwise, of the creditor and debtor." La. R.S. 6:1123(B).

The Louisiana Supreme Court has observed that to allow debtors to bring breach of contract claims based on an oral agreement to lend money would circumvent the writing requirement of the Credit Agreement Statute, thwart the Legislature's intent, and render the statute meaningless. *King v. Parish Nat'l Bank*, 04-0337, pp. 10-11 (La. 10/19/04), 885 So.2d 540, 547 (citing *Jesco Const. Corp. v. Nationsbank Corp.*, 02-0057, p. 4 (La. 10/25/02), 830 So.2d 989, 992).

5

Here, Ms. Bacot failed to provide a written agreement to base her claims that PHH advised her not to take action as the fraud investigation was ongoing. This claim does not meet the writing requirement of La. R.S. 6:1122 of the Credit Agreement Statute. Thus, trial court did not err in dismissing Ms. Bacot's state law claims.

*Louisiana Unfair Trade Practices Act Claims*

Ms. Bacot next contends that Defendants' acts and omissions are in violation of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq.*, ("LUPTA"). LUPTA exempts federally insured financial institutions, their subsidiaries, and their affiliates from its jurisdiction. La. R.S. 51:1406. Actions or transactions subject to the jurisdiction of the commissioner of financial institutions, the financial institutions and insurance regulators of other states, or federal bank regulators who possess authority to regulate unfair or deceptive trade practices are also exempt from the LUPTA. *Id*.

Deustche Bank is exempt because it is a federally chartered bank insured by the Federal Deposit Insurance Company. PHH serviced Ms. Bacot's loan with Deustche Bank, making it a residential mortgage lender subject to the regulation of the Louisiana Commissioner of Financial Institutions through the RMLA; thus, PHH is exempt.[8] The trial court did not err in finding that Ms. Bacot failed to state a cause of action under LUPTA.

_____

[8] Residential mortgage lenders are instead subject to the regulation of the Louisiana Commissioner of Financial Institutions under the Louisiana S.A.F.E Residential Mortgage Lending Act (RMLA), La. R.S. 6:1081, *et seq*. The RMLA defines "residential mortgage lender" as "a person who engages in a residential mortgage lending activity as a mortgage broker or mortgage lender, or

*Claims under La. C.C.P. art. 863*

Ms. Bacot alleges that Defendants violated La. C.C.P. art. 863 by failing to investigate the matter before filing the executory process petition.[9] She fails to state any specific facts that demonstrate how Defendants did not comply with their responsibilities to properly investigate the facts alleged in the executory process petition. As a result, Ms. Bacot failed to state a cause of action against Defendants under La. C.C.P. art. 863.

*Claims under the Louisiana Rules of Professional Conduct*

Ms. Bacot's reconventional demand asserts that Ms. Stout and her law firm, McGlinchey, violated the Louisiana Rules of Professional Conduct in three respects: making intentional fraudulent misrepresentations, committing fraud on

---

both." La. R.S. 6:1083(19). Servicing a mortgage loan falls under the definition of "residential mortgage lending activity." La. R.S. 6:1083(20).

[9] Louisiana Civil Code of Civil Procedure Article 863(B) provides in relevant part:

> B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:

> (1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

> (2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

> (3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> (4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

the court, and withholding discoverable evidence. None of these alleged actions is within the jurisdiction of this Court. Addressing violations of the Louisiana Rules of Professional Conduct is a matter within the jurisdiction of the Louisiana Attorney Disciplinary Board and the Louisiana Supreme Court. *See* La. Const. Art. V, Section V; *Ricco v. Luminais*, 15-1109, p. 8 (La. App. 4 Cir. 4/27/16), 192 So.3d 858, 864. We lack jurisdiction to consider this issue.

### *Criminal Law Claims*

Ms. Bacot next alleges that Defendants filed false records in the trial court and engaged in forgery. These are alleged criminal violations of La. R.S. 14:133 and La. R.S. 14:72. As the trial court observed in its reasons for judgment, only a district attorney may enforce criminal statutes. Thus, the trial court did not err in dismissing Ms. Bacot's criminal law claims.

### *Federal Law Claims*

Ms. Bacot asserts that Defendants' conduct has violated the following federal laws: the United States Constitution, the Fair Housing Act, the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and the Real Estate Settlement Procedures Act.

#### *Due Process Allegations*

Executory proceedings are expressly authorized under the Louisiana Code of Civil Procedure. *See* La. C.C.P. art. 2631. Moreover, the Louisiana Supreme Court has held that statutes relating to executory process are constitutional notwithstanding alleged due process violations. *See Buckner v. Carmack*, 272

So.2d 326 (La. 1973). In *Deustche Bank I*, this Court held that Deustch Bank followed proper procedure in its executory process proceeding against Ms. Bacot. *Deutsche Bank*, 21-0430, p. 10, 333 So.3d 1280 at 1286.

Although Ms. Bacot asserts her due process rights were violated by Defendants, no fact exists in the reconventional demand that specifies how due process was denied here. A general allegation of the unconstitutionality of the executory process is not sufficient. Thus, Ms. Bacot failed to state a cause of action under the Constitution.

Ms. Bacot further alleges violations under 42 U.S.C. § 1985 (conspiracy to interfere with civil rights) and 42 U.S.C § 1986 (action for neglect to prevent). The federal Fifth Circuit has held that in order for a plaintiff to state a claim under 42 U.S.C 1985(3), the following four elements must be alleged:

> 1) conspiracy involving two or more persons; 2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and 3) an act in furtherance of the conspiracy; 4) which causes injury to a person or property or deprivation of any right or privilege of a citizen of the United States. [10]

> *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir.1994) (citation omitted).

Also, "[the] plaintiff must allege some class-based animus." *Burns-Toole v. Byrne*,

---

[10] 42 U.S.C § 1985(3) (depriving persons of rights or privileges) provides in relevant part:

> …[I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

9

11 F.3d 1270, 1276 (5th Cir. 1994). A complaint does not sufficiently allege a cause of action under 42 U.S.C. § 1986 unless it alleges the existence of a conspiracy prohibited by 42 U.S.C § 1985. *See Dowsey v. Wilkins*, 467 F.2d 1022, 1026 (5th Cir.1972); *see also Loy v. Clamme,* 804 F.2d 405, 408 (7th Cir.1986) (citation omitted).

The trial court ruled that Ms. Bacot failed to state a claim under 42 U.S.C § § 1985 and 1986 because she did not set forth facts to support a conspiracy between defendants or that any Defendant acted out of racial animus. Ms. Bacot asserts that PHH discriminated against her on the basis of her disability, which satisfies the need to allege class-based animus. Nevertheless, her claim fails to meet the elements outlined in *Hilliard*. Only one defendant, PHH, is mentioned as having a class-based motivation in its actions against Ms. Bacot. A conspiracy must involve two or more persons. Thus, the trial court did not err in dismissing Ms. Bacot's claims under 42 U.S.C § § 1985 and 1986.

*Fair Housing Act*

Ms. Bacot also alleges that Defendants violated the Fair Housing Act. See 42 U.S.C. § 3601, *et seq*. To state a claim under the Fair Housing Act, a plaintiff must plead four elements:

> (1) that they were a member of a protected class, (2) they attempted to engage in a "real estate-related transaction" [with the defendant] and met all relevant qualifications for doing so; (3) the defendant refused to transact business with the plaintiff despite their qualifications, (4) and the defendant [] continued to engage in that type of transaction with other parties with similar qualifications.

*Ray v. U.S. Bank Nat. Ass'n*, 627 Fed.Appx. 452 (6th Cir.2015) (citation omitted). Here, Ms. Bacot does not allege that Deustche Bank or PPH took any

10

action based on her race or disability. Thus, the trial court did not err in dismissing Ms. Bacot's Fair Housing Act claims.

*Fair Debt Collection Practices Act*

Ms. Bacot claims that Defendants violated the Federal Debt Collections Procedures Act (FDCPA). *See* 15 U.S.C § 1692, *et seq.* Federal courts have held that the FDCPA "is directed at independent debt collectors and not creditors attempting to collect on their own debts." *Beck v. Alliance Funding Co.*, 113 F.Supp.2d 274, 275 (D. Conn.2000) (citing *Meads v. Citicorp Credit Services, Inc.*, 686 F.Supp. 330, 333 (S.D.Ga.1988); *Aubert v. American General Finance*, *Inc.*, 137 F.3d 976, 978). Moreover, "[u]nder the FDCPA, a debt collector does not include "'any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person.'" *Brumberger v. Sallie Mae Servicing Corp.*, 84 F.App'x. 458, 459 (5th Cir.2004) (citing 15 U.S.C § 1692a(6)(F)).

Deustche Bank began executory proceedings to collect on its own debt. Further, Ms. Bacot did not plead that PHH obtained the rights to service her loan after she was in default. Neither Defendant is considered a debt collector subject to the FDCPA. As a result, Ms. Bacot failed to state a cause of action under the FDCPA and the trial court did not err in dismissing these claims.

*Fair Credit Reporting Act*

Ms. Bacot also alleges that Defendants' conduct violates the Fair Credit Reporting Act (FCRA). *See* 15 U.S.C. § 1681, *et seq*. The FCRA requires furnishers of credit information to provide accurate information to consumer reporting agencies. *See* 15 U.S.C § 1681s-2(a). Furnishers of credit information must also conduct a reinvestigation of information provided to consumer reporting agencies after notice of a customer dispute is received from the consumer reporting agency. *See* 15 U.S.C 1681s-2(b). While no private right of action exists for violations of 15 U.S.C § 1681s-2(a), the FCRA allows for private individuals to sue for violations of 15 U.S.C. § 1681s-2(b). *See* 15 U.S.C 1681s-2(c) and 1681s-2(d).

Ms. Bacot does not allege that any Defendant received a notice of customer dispute from a consumer reporting agency or that they failed to reinvestigate after receiving such a notice. Further, and as noted by the trial court in its reasons, Ms. Bacot failed to state a cause of action for a violation of 15 U.S.C. § 1681s-2(a) because no private right of action exists under that section. Thus, the trial court did not err in dismissing Ms. Bacot's FDCPA claim.

*Real Estate Settlement Procedures Act*

Ms. Bacot alleges that Defendants' conduct violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*., ("RESPA"). As the trial court observed in its reasons for judgment, only Sections 2605, 2607, and 2608 of RESPA establish a private right of action. These sections mandate disclosure relating to assignment of loan servicing, prohibit kickbacks, and prohibit property

sellers from requiring purchasers to buy title insurance from a specific company. None of these sections provide for a private right of action for erroneously filing a foreclosure action, which is the crux of Ms. Bacot's allegations against Defendants. Thus, the trial court did not err in dismissing Ms. Bacot's RESPA claim.

*Fraudulent Judgment Claim*

Finally, Ms. Bacot contends that the trial court's judgment was procured by fraud or fraud on the court. Ms. Bacot cites to La. C.C.P. art. 2004, which provides that "[a] final judgment obtained by fraud or ill practices may be annulled." Nevertheless, Louisiana courts have held that "[a]n action for nullity alleging fraud or ill practice is a relative nullity that must be asserted in a direct action filed in the court that rendered the judgment; and the adverse party must be cited to appear as in ordinary suits." *State v. Ramos*, 18-136, p. 3 (La. App. 5 Cir. 12/17/18), 264 So.3d 564, 567 (citations omitted). Here, Ms. Bacot has not filed an action to annul the trial court's judgment for vices of substance in the trial court. As a result, this issue is not properly before this Court.

## DECREE

For the foregoing reasons, the trial court's judgment dismissing Ms. Bacot's claims is affirmed.

**AFFIRMED**